## E. KAHN'S SONS CO. v. COLUMBUS PACKING CO.
### No. 6874.

Circuit Court of Appeals, Sixth Circuit.
April 13, 1936.

Walter F. Murray, of Cincinnati, Ohio (Frank L. Zugelter, of Cincinnati, Ohio, on the brief), for appellant.

R. E. Westfall, of Columbus, Ohio (Smith W. Bennett, of Columbus, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Bill by the E. Kahn's Sons Company, appellant, against the Columbus Packing Company, appellee, for an injunction against infringement of its registered copyrighted labels Nos. 29,869, 29,878, and 25,251; its registered trade-marks Nos. 176,638, 233,734, and 233,735; and against unfair competition in the use of labels and containers. The District Court denied relief and dismissed the bill.

It is not contended that appellant's copyrighted labels or technical trade-marks are invalid and we find no infringement of any of them. The gravamen of the bill is contained in its allegations that appellee has been guilty of unlawful and unfair competition in business.

Both appellant and appellee were engaged in the business of packing and selling meat and meat products, and each operated in much the same territory. In 1922 appellant designed and began the use of striped containers for its high quality lards, a blue and yellow striped tin pail (after a few months changed to blue and white striping) for "kettle rendered lard," and a red and yellow striped tin pail for its "pure lard." Kettle rendered lard and pure lard are both high-grade lards, but they are rendered by different processes and are different in appearance. Pure lard is cheaper in price and sells to a cheaper class of trade.

The blue and white striping was also used extensively by appellant on various pasteboard cartons and paper wrappings for its other meat products. The red and yellow seems to have been limited to pails and cartons of various sizes, containing pure lard. Both combinations of stripes with the American Beauty trade-mark (described later) were prominently displayed in appellant's advertising, though the blue and white predominated for the reason that that color scheme was used on other products than lard. The advertising media consisted of tin and cardboard displays, picturing the striped pail of appellant alongside a plate of tasteful looking doughnuts, cake, bread, and pie. There were cardboard representations of hams and sides of meat wrapped in blue and white striped paper and of a plate of eggs and bacon beside a blue and white striped carton of appellant's bacon. Appellant distributed cook books and pamphlets, blotters, etc., all emphasizing the two combinations of stripings and the uniform American Beauty la-

bel. There were price lists, done in black and white, but depicting striped containers.

Appellant's advertising expenditure ran into hundreds of thousands of dollars, and whatever the reason, its business enjoyed a striking growth, from sales of $1,360,000 in 1916 to $13,300,000 in 1931, the year before the bill was filed. Up to that time appellant had sold 10,000,000 of its striped pails and 2,000,000 of its similarly striped cartons.

Appellant's open kettle rendered lard was sold in pails of conventional size and shape. Its four-pound pail, illustrative of all the others, was encircled with vertical stripes of deep blue about one-fourth of an inch wide, alternating with white stripes of the same width. The blue had a metallic, almost iridescent luster, in certain lights. The label or medallion (its trademark) showing that it was a Kahn product was positioned on one side, halfway between the ears of the pail.

The medallion was oval-shaped, being roughly five inches high and four inches across. It was in all respects but one the same in position, shape, size, and color on both the kettle rendered and pure lard pails, and except in size and position on the lard cartons likewise, so that one description of its chief features will suffice. The outer rim of the medallion was a blue stripe, of the same luster just described, about an eighth of an inch wide. Next within was the finely crosshatched yellow and red band of the same width. Within this the background of the lettering was partly a finely dotted red and yellow and partly a bright yellow. A rose, taking up about a fourth of the space and at the left, was pictured against a background of dark blue. There were three or four green stems with leaves, two buds, and one deep red rose in full bloom. To the right of the rose and with it, occupying the upper three-fifths of the medallion, in letters about half an inch high, were the words "KAHN'S ·

AMERICAN
BEAUTY"
—positioned approximately as herein set out. Below this was a fawn colored band about three-fourths of an inch high, extending almost the width of the medallion and bearing in red letters three-sixteenths of an inch high the words

"OPEN KETTLE

RENDERED LARD"—positioned approximately as herein set out. Below the band on a red and yellow background in red letters about an eighth of an inch

high were the words, "U. S. Inspected and Passed by Department of Agriculture Est. No. 89." Beneath and on the same background and at the bottom of the medallion in blue letters three-sixteenths of an inch high were the words, "THE E. KAHN'S SONS CO., CINCINNATI, O." At the very bottom, just outside the blue rim and following its curve, was a narrow band of yellow, about two inches long, in which was printed in letters about an eighth of an inch high "4 LBS. NET WT." In the medallion, to the right, and just above the fawn colored band, were the words, "Reg. U. S. Pat. Office."

Appellant's pure lard was sold in an identical pail except the vertical and alternate striping was in red and yellow, the red having the same iridescent quality of the first described blue. The medallion varied only in the inscription "PURE LARD" on the fawn colored band in red letters about one-half an inch high.

Appellant's four-pound pure lard carton was, roughly, four inches square by seven inches long; and the striping, in alternating red and yellow bands about one-fourth of an inch wide, minus the metallic luster, ran crosswise around the box on their four sides. The oval shaped medallion, about four inches by three inches, with the long axis parallel to the stripes, appeared about the center on all four faces.

Appellant's one pound carton is identical except that its proportions are less.

Appellee's four-pound pails were the same size and shape as appellant's. Its kettle rendered lard was sold in a pail striped vertically and alternately in a flat, lusterless blue and white, but the stripes were of different widths, the white stripe being about two and one-half times as broad as the narrow one-eighth inch stripe of blue. The medallion was about the same size as appellant's, but its long axis was horizontal and not perpendicular. It was rimmed in narrow, concentric ovals of white, a predominate blue, orange, and white. The background was a salmon colored orange. At the top in large one-half inch letters were the words "CAPITAL BRAND" arranged along the inner curve of the rim and below was a picture of the Ohio state capitol. Beneath this was a three-fourths inch blue band extending four inches along the long axis of a medallion, bearing in one-eighth inch white letters, the inscription "OPEN KETTLE RENDERED" and below in one-fourth inch letters in the sal-

mon orange "PURE LARD." Beneath this, in three-sixteenths inch lettering was "U. S. Inspected and Passed by Department of Agriculture Est. No. 586" and in one-fourth inch letters edged in white "THE COLUMBUS PACKING CO."; and in one-eighth inch letters in blue at the very bottom "COLUMBUS, OHIO," the last two lines being curved with the rim. The words "4 LBS. NET WEIGHT" on this pail appeared at the top of the medallion in a small, narrow band of white, curving with the rim. Appellee has used this pail (Plaintiff's Exhibit No. 12) since 1929.

Appellee's pure lard was sold in a pail striped vertically and alternately in a flat, lusterless white and salmon colored orange. The white stripe was very narrow, about one-sixteenth of an inch, and the orange three times as broad. The medallion was the same size as in its blue and white pail; its long axis was horizontal and it was rimmed in concentric ovals of white, a predominant blue, orange, and white. The background of the medallion was orange in the same tone as the stripe. In heavy one-half inch blue letters at the top was the word "COLUMBUS," curving with the rim, and beneath the word "BRAND" in blue, one-fourth of an inch high; then a dark blue band three-fourths of an inch high splitting the medallion horizontally in half, with the legend "PURE LARD" in heavy, half inch orange letters rimmed in white. Immediately below and rather prominent, in three-sixteenths inch blue letters, was "THE COLUMBUS PACKING CO. COLUMBUS OHIO" and in narrow, one-fourth inch white letters at the bottom were the words "U. S. Inspected and Passed by the Department of Agriculture Est. No. 586." Curving with the rim, the "4 LBS. NET WEIGHT," as before, was at the top in blue letters on a white band. Appellee has used this pail (Plaintiff's Exhibit No. 11) since 1931.

Appellee's four-pound pure lard carton was, roughly, four inches square and seven inches long; the orange and white stripes ran crosswise and preserved the same proportions in width as on its lard pail. The four medallions, one on each face, were slightly flattened but were otherwise virtually identical in color and legend with the one appearing on the pure lard pail. The long axes of these ovals were perpendicular to the striping as on appellee's pails. The ends were likewise striped and bore a medallion, circular, but otherwise similar in appearance.

Appellant has, of course, no monopoly upon any particular size or shape of pails or cartons, or upon any special color, size, or arrangement of stripes and labels, but to promote the sale of its products and to denote their origin it has used a collocation of these features as its trade-mark since 1922. Appellant's appropriation and use of this combination was lawful, its customers long since have become well acquainted with it; appellant has reaped tremendous advantages from it, and we think appellee has too closely simulated this peculiar trade dress of appellant's goods. See O. & W. Thum Co. v. Dickinson, 245 F. 609, 619 (C.C.A.6).

For its "open kettle rendered lard" appellee has adopted the same relative size and shape of pails used by appellant for the product bearing the same name. It has striped the pail vertically with blue and white just as did appellant, the only difference, a minor one, being in the smaller size of the blue stripes. Instead of appellant's oval medallion (its trade-mark) appellee has placed in a similar location upon its pail but crosswise instead of lengthwise, the same size oval medallion with the same blue border.

For its "pure lard" appellee has used the same relative size and shape of pails adopted by appellant for its product of the same name and has striped the pails vertically as did appellant. True, it used stripes of white and orange instead of appellant's red and yellow. The white stripe is very narrow, but the orange is of the same width as the yellow used by appellant, and orange is in fact a reddish yellow. Appellee has here also used an oval medallion with a blue border similar to that used by appellant and has given it the same position on its pail except that the long axis is horizontal.

Appellee's cartons are of the same relative size and shape as those of appellant and it embellished them with the same white and orange striping found on its pure lard pails instead of appellant's red and yellow stripes, but the stripes run crosswise entirely around the carton, just as in appellant's carton. Appellee has positioned its oval medallion on all four faces of the carton just as appellant did its trade-mark, ex-

cept the axis of the label runs lengthwise instead of crosswise.

Considering the evidence in the aggregate, we think appellee's purpose was to simulate the appearance of appellant's pails and cartons as nearly as was lawfully possible. There was an abundance of other colors, designs, and combinations, even in stripes, and forms of label, which appellee might have used without the possibility of confusion. As we have indicated, appellee did not exactly copy appellant's design in any instance, but the differences were not sufficiently distinctive to prevent the probability of deception. There is no absolute guide to decision except the very general rule that every case must be determined upon its own facts and circumstances in the light of settled principles. Proctor & Gamble Co. v. Globe Ref. Co., 92 F. 357, 361 (C. C.A.6). We think appellee went too far; that the dress of its containers, both pails and cartons, too closely resembled that adopted by appellant and was likely to deceive the eye of ordinary purchasers, neither cautious nor discriminating, and lead them to believe that they were buying appellant's lard. This is unfair competition. McLean v. Fleming, 96 U.S. 245, 251, 24 L. Ed. 828; Coats v. Merrick Thread Co., 149 U.S. 562, 566, 13 S.Ct. 966, 37 L.Ed. 847; Samson Cordage Works v. Puritan Cordage Mills, 211 F. 603, 610, L.R.A.1915F, 1107 (C.C.A.6); Chesebrough Mfg. Co. v. Old Gold Chem. Co., Inc., 70 F.(2d) 383, 384 (C.C.A.6); Wisconsin Elec. Co. v. Dumore Co., 35 F.(2d) 555, 558 (C.C.A.6). There was little, if any, evidence of actual deception, but appellee's evident purpose raises the presumption that there would be. My-T Fine Corp. v. Samuels, 69 F.(2d) 76 (C.C.A.2).

Appellee's chief defense consisted in an effort to show that appellant had not acquired an exclusive right to use its striped pails and cartons because other companies had made use of such pails and cartons since 1922. This evidence wholly failed. There was no evidence that any other company except appellee had ever undertaken to simulate appellant's peculiar combinations.

The decree is reversed and a decree will be entered enjoining appellee from putting up, offering for sale, or selling lard in pails similar to Exhibits 11 and 12, or in cartons which in appearance simulate in the particulars herein pointed out, the cartons of appellant; and for an accounting.