**G. H. MUMM CHAMPAGNE (SOCIETE VINICOLE DE CHAMPAGNE, Successors) et al. v. EASTERN WINE CORPORATION.**

No. 276.

Circuit Court of Appeals, Second Circuit.

April 27, 1944.

500

Samuel E. Darby, Jr., of New York City, for the appellant.

Beekman Aitken, of New York City, for appellees.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from a summary judgment in an action to protect two trade marks, and to enjoin unfair competition. The plaintiffs are two corporations; one incorporated in Delaware, the other in France. The French company registered two trade marks in the United States; one in 1923, the other in 1934; and by contract it has given the Delaware company the sole right to import and sell its wines in the eastern part of the United States. The French company has never authorized the action at bar; the Delaware company sues on its own behalf for unfair competition, and on behalf of the French company upon the trade-marks. The issues are whether it has authority to sue on behalf of the French company; whether it has enough interest of its own to sue on its own behalf; whether defendant infringes the marks or competes unfairly; and whether each plaintiff is entitled to a separate accounting. The French company is the maker of "Mumm's Champagne," which has been well known in this country since 1883. For many years it has sold one of its brands under a white label, across which a red stripe runs diagonally from the upper left hand corner to the lower right hand; this stripe being edged in gold and bearing the words printed in gold: "Cordon Rouge." This is the label protected by both marks. The French company organized the Delaware company in 1933, and is the owner of fifty-three per cent of its common stock, and all of its preferred stock. Since the beginning of 1934 the Delaware company has continuously sold the French company's champagne with the red stripe upon the label as we have just described it. On January 1, 1938, the two companies entered into a contract by which the French company agreed to sell its wines in the United States only to the Delaware company, and the Delaware company agreed not to sell the champagne of any other importer in the United States, and to undertake to devote its best efforts to the sale of the French company's wines. This contract contained the following clause: "The Producer" (the French company) "will protect and enforce its trade mark rights in the United States of America against any infringement thereof, and the Importer" (the Delaware company) "will promptly acquaint the Producer of any conduct by competitors believed to constitute an infringement of the Pro-

ducer's rights, and of all facts in respect thereto, together with recommendations as to proposed procedure for the Producer's instructions and dispositions, and any expenses for legal proceedings consequent thereupon will be borne by the Producer for the protection of the Producer's rights." The defendant is a New York corporation —a vintner—selling domestic champagne in New York and New Jersey. In September, 1937, it began to use a white label on "sparkling wine"—which included champagne—with a red stripe, narrower than the plaintiffs' running from the right hand upper corner diagonally to the left hand lower, and carrying no legend. This label it changed in January, 1941, to the one now challenged, in which the label bears a red stripe of the same width as the plaintiffs', running from the upper left hand corner to the lower right hand, and carrying the legend, "Chateau Martin" in gold letters, with the word "Brand" added in much smaller type. This is the alleged infringement and unfair competition.

▮▮▮ Since the Delaware company and the defendant are corporations of different states, and the amount in controversy is more than $3,000, the district court had unquestioned jurisdiction over the action for unfair competition. As to it only two questions arise: whether the use of the defendant's label is unfair competition because it is likely to result in the substitution of the defendant's champagne for "Mumm's" champagne, bearing the red stripe; and whether the Delaware company has any interest to protect against such substitution. There can be no doubt that substitution is likely. Champagne is a wine especially cherished by those who seek to impress their associates with their opulence and munificence; to many its consumption is an envied mark of luxury and social importance. Those who covet a name for taste and elegance, do indeed affect discrimination in the recognition of various brands; but, especially as an evening wears on, the label, and only a very casual glance at the label, is quite enough to assure the host and his table that he remains as free-handed and careless of cost as when he began. At such stages of an entertainment nothing will be easier than for an unscrupulous restaurant keeper to substitute the domestic champagne. The defendant excuses its change from the label of September, 1937, to that of January, 1941, on the ground that the Federal Alcohol Adminis-

tration requires all champagnes made by the process it uses to accompany the word, "champagne," by the words "sparkling wine," and that this could not be done while the label ran in the original direction. An inspection of the label makes it hard, if not impossible, to accept this explanation, and goes far to confirm the finding of the judge that the change was a deliberate imitation; nevertheless, since we are reviewing a summary judgment, we will not assume a point which depends upon a finding of the defendant's bad faith, and we need not. Whether or not the change in January, 1941, was innocent, as soon as the Delaware company challenged it by this action, less than two years later, the defendant was charged with notice of any confusion which was likely to ensue, and had no further excuse. It does not suggest that its good-will had so soon become associated with a red stripe which so closely imitates the plaintiffs'; all it says is that other kinds of wine have been sold under labels bearing a red stripe. At most only one of these was a champagne; and the fact is important in any case only as evidence that the stripe does not indicate provenance from the French company. Whatever prevalence the red stripe may have had, scarcely at all weakens the probability of confusion.

▮▮▮ The defendant argues, however, that, while in the case of a trade-mark infringement, it is not necessary to show instances of actual confusion, it is necessary to do so in cases of unfair competition, and concededly none have been shown. It is of course true that to recover damages or profits, whether for infringement of a trade-mark or for unfair competition, it is necessary to show that buyers, who wished to buy the plaintiff's goods, have been actually misled into buying the defendant's; but when the question is of an injunction, we can find as little warrant for demanding evidence of actual confusion in cases of unfair competition as in those of trade-mark. This distinction between an injunction and damages was certainly the basis of the decision in Straus v. Notaseme Hosiery Co., 240 U.S. 179, 36 S.Ct. 288, 60 L.Ed. 590, and, as soon as it appears that the defendant has imitated a make-up, the court will ask no further proof that his purpose to trade upon the plaintiff's reputation is likely to be successful. My-T Fine Corp. v. Samuels, 2 Cir., 69 F.2d 76; E. Kahn's Sons Co. v. Columbus Packing Co., 6 Cir.,

82 F.2d 897, 900. As we have just said, after the defendant's present make-up was challenged there could no longer be any defense against deliberate imitation. Besides, we cannot see any distinction in principle between the two causes of action, both of which are in substance the same: i.e. the diversion of prospective buyers by misleading representation. True, a trade-mark proper is a fabricated symbol, and the second comer can have no independent interest in its use to match against the first comer's interest to protect his business; and a court will content itself with a less degree of similarity. On the other hand, when the make-up is drawn from the public demesne—as in the case at bar—the second comer has at least a theoretical interest in its use, of which a court may hesitate to deprive him if the interest be really serious. But, in the case at bar, the defendant's interest is not serious at all; there is not the slightest reason why it should not adopt some other color, if it wishes to add a stripe to its label.

The second objection: that the Delaware company has no interest to protect, is without substance. We have not to deal with the absence of the "owner" of the "title" to the trade-mark—whatever meaning may attach to those much used, and much abused, words. The French company is not an "indispensable" party; the Delaware company speaks in its own interest, which is quite separate. It has a monopoly of the sale of Mumm's champagne in the eastern part of the United States, which substitutions of the defendant's wine will directly invade. Sales effected by such substitutions are sales of which it is deprived; and that is the only interest which ever, or substantially ever, supports such actions. Indeed, in Scandinavian Belting Co. v. Asbestos & Rubber Works of America, 2 Cir., 257 F. 937, we went so far as to hold that a person in the Delaware company's position had enough interest to register the trade-mark as its own.

There remains only the rather barren question whether we should also affirm the judgment in favor of the French company: barren, because one injunction is as good as two, and because it is not very likely that either plaintiff will be able to prove any damages. Nevertheless, it is at least possible that each has suffered loss, and if so, the loss is separate. The Delaware company has lost any profit it would have made above the price it pays to the French company; that company has lost any profit it would have made in its sales to the Delaware company, provided sales lost by the Delaware company resulted in sales lost by it to that company. The first question is whether the Delaware company had authority to sue in the French company's name, for we agree that that company must have been before the district court, if this part of the judgment is to be affirmed. That question in turn depends upon the contract between the two companies. While the French company remained able to sue, the parties did mean that it alone should do so; it promised to protect the mark, and to pay the expenses of the action. Were it not for the war, which has now made impossible the performance of that promise, we should agree that the Delaware company had no standing to sue in the French company's name. But the war has done just that, and we must ask ourselves whether the contract does not disclose an underlying purpose that can be fulfilled in no other way than by implying such an authority. We may concede that the question is not of marking the bounds of an authority expressly granted: i.e. that the contract created no agency of any sort; although even that is not entirely certain, in view of the Delaware company's promise to promote the French company's business. Nevertheless, if we can gather from the contract as a whole that the parties intended the mark to be protected at all events, it is an easy step to say that, when the means selected could not be used, they intended the nearest equivalent to take its place. That this is to interpolate a provision into the contract which the parties did not express is of no moment; when an unforeseen contingency arises, courts every day substitute what they think the parties would have said to supply their omission. This is a perfect occasion for doing just that. As we have seen, the Delaware company exacted an undertaking from the French company to protect the mark at its own expense. It has now become impossible for the Delaware company to call upon the French company to make good its engagement; if any action is to be brought the Delaware company must bear the expense in the first instance. It is true,—as we have held—that the Delaware company may sue on its own behalf, but it cannot call upon the French company to pay the bill for that suit; and, besides, the parties regarded the

Delaware company as having an independent interest in the protection of the mark, as mark.

The French company, though now it must be classed as an "enemy," would be competent to "institute and prosecute suits in equity against any person * * * to enjoin the infringement of letters patent, trade-mark * * * owned" by it, provided that the alien property custodian be advised before judgment is entered. 50 U.S.C.A. Appendix § 10(g). Finally, the war did not put an end to this authority of the Delaware company. 50 U.S.C.A. Appendix § 10(h).

Judgment affirmed.