**AVEDIS ZILDJIAN CO.,** Plaintiff,

v.

The **FRED GRETSCH MFG. CO.,** and **Buegeleisen & Jacobson, Inc.,** Defendants.

Civ. No. 13728.

United States District Court
E. D. New York.

Dec. 26, 1956.

Harold E. Cole, Boston, Mass., for plaintiff.

Leo C. Krazinski, New York City, for defendants.

BYERS, District Judge.

In this case the plaintiff seeks to review the action of the Commissioner of Patents in refusing to cancel two trade marks duly registered and owned by the defendant Gretsch, pursuant to Title 15 U.S.C.A. § 1071, wherein the practice is assimilated to the provisions of Title 35 U.S.C. §§ 145 and 146, having to do with patents.

The complaint also alleges unfair competition on the part of the defendant in respect of matters which flow from the conflicting claims of the parties to the right to the use of the family name "Zildjian" in the cymbal business.

The plaintiff is a Massachusetts corporation of Quincy, in that State, and the defendant Gretsch is a New York corporation having its principal office in this District; the co-defendant is likewise a New York corporation located in Manhattan, whose interest in the litigation has not been revealed.

The real controversy is between the plaintiff and Gretsch, and is the current manifestation of litigation between the parties which started in 1929.

Most of the material facts are set forth in a stipulation approved by the court on January 26, 1956.

Both parties are engaged in the sale of cymbals; the plaintiff manufactures and sells from its plant in Quincy, Massachusetts, while Gretsch imports them from Istanbul, formerly known as Constantinople, in Turkey. The plaintiff's business started in 1929, while Gretsch began importing these (K. Zildjian) Turkish cymbals in 1913–14; but its present status dates from 1928 when a

contract in evidence was entered into between Gretsch and the K. Zildjian partnership of Constantinople.

The bone of contention is the use of the family name Zildjian, alone or with the respective initials "A" or "K", or the given name Avedis (formerly Armand), and the essence of the dispute is the question of whether one Aram, the uncle of Avedis (who is the president of the plaintiff), possessed complete knowledge of the secret formula and process for making cymbals which had been practiced by the Zildjian family for a great many years (perhaps 300), and if he did, whether in 1928 his knowledge was imparted by him to Avedis, and is now practiced by the plaintiff corporation of which he is the head.

The subject was gone into extensively on the trial of this case, and in the hearings in the Patent Office, but since a precise answer to the question depends upon what various persons say in 1956 concerning what was known in 1928 by persons now deceased, it must be obvious that more or less informed conjecture, rather than reasonable assurance, must govern the resolution of the controversy as herein undertaken.

Nor does the trial testimony reveal any substantial contribution to the history of the registrations; as to the antecedent events however there is corroboration of what is stated in the respective decisions rendered in the Patent Office, which are exhibits attached to the complaint.

No necessity is seen for rehearsing the factual recitals in those two opinions, nor is it believed that anything has been presented to the court on this trial which would justify a decision contrary to that announced by the Commissioner.

This complaint was filed in July of 1953 within thirty days after the final decision of the Patent Office, and some twenty-four years after a prior litigation between the parties in the District Court of the United States for the District of Massachusetts, had resulted in a consent decree. Many of the provisions of that decree and its effect, narrow the present controversy more than the briefs here on file would suggest.

In that case the partnership of which the corporate plaintiff is the successor, and its members individually, were the defendants, and Gretsch was the plaintiff.

The principal argument of the plaintiff here is that since Gretsch is not a manufacturer of these cymbals but only the agent of the Turkish producer, the two trade marks which the Patent Office refused to cancel should now in effect be denied registration by action of this court; but as pointed out in the opinion of the Examiner, those renewal registrations were applied for nearly twenty years after the consent decree had been entered and the original registrations were granted.

The first paragraph of the decree reads:

"Ordered, Adjudged and Decreed that plaintiff (Gretsch) is the sole and exclusive owner of the certificate of registration of trade marks issued to plaintiff on the 17th day of June, 1927, No. 228,592; on the 21st day of August, 1928, No. 245,-846, and on the 2nd day of October, 1928, No. 247,623 and of the trade marks therein and thereby registered and each of them and of all the rights secured by the aforesaid certificates of registration."

Plaintiff seeks to avoid the Patent Office decision by referring to later Office holdings having to do with importers of trade mark articles. Decisions are cited in its brief to the effect that an importer of goods bearing a trade mark of a foreign manufacturer, is not the owner of the trade mark and therefore not eligible to register it in the United States Patent Office.

In other words, the decision in this case rendered in 1953 is said to have become obsolete in view of the later departmental holdings upon which the plaintiff relies.

Here Gretsch was very much more than a mere importer, and as can be seen from a reference to its 1928 contract with K. Zildjian & Co., was commissioned to develop and expand business in the United States and Canada of the Turkish producer; the good will of the business of the latter in these two countries was assigned to Gretsch for the purpose of effectuating its right to register the trade marks in question.

The terms of the contract are discussed and explained in the Patent Office opinions, and nothing need here be said in elaboration of that branch of the case.

This subject will be referred to below in a recapitulation of the legal questions to be embraced in this decision.

The matters in controversy pro and con, concerning the mutual charges of unfair competition, will be briefly discussed in their proper order, to the extent deemed necessary.

In an attempt at brevity, the contentions deemed important will be separately listed and commented upon:

(1) *Gretsch's right to register the trade mark as agent even though it doesn't manufacture the cymbals.* It was in terms commissioned so to do by the K. Zildjian partnership in Turkey in connection with the assignment of the good will of K. Zildjian in the United States, for the evident purpose of building up the distribution in this country of their Turkish product. The law on this subject must be deemed to have been established in Scandinavia Belting v. Asbestos, etc., 2 Cir., 257 F. 937; see pages 955 et seq. That case was cited with approval in G. H. Mumm Champagne v. Eastern Wine Corporation, 2 Cir., 142 F.2d 499, at page 502.

The Patent Office decisions, cited by plaintiff, which are later than that here sought to be reversed, have been examined and are not understood to change the law as declared in the Scandinavia case. It is reasonable to assume that if the plaintiff had deemed that such was their effect, some kind of application would have been timely made to the Commission for a rehearing of this petition, in light of the later holdings. No such attempt seems to have been made.

The plaintiff contends that fraud was practiced by Gretsch in obtaining the original registrations. That question was presented to the Patent Office as appears from the opinions, and was resolved in favor of Gretsch, and thus becomes in effect a finding which this court accepts; see Esso Standard Oil Co. v. Sun Oil Co., 97 U.S.App.D.C. 154, 229 F.2d 37.

The same comment applies to the plaintiff's assertions concerning the alleged abandonment by Gretsch, in respect of a certain non-essential element of the drawing showing the trade mark as registered.

The consent decree has its place in connection with this branch of the case. That decree is in full force and effect as against the plaintiff which is the corporate successor of the partnership composed of the defendants named in that case. The trade mark status as between the parties was thereby fixed and therefore is not open to question in this litigation. This means that the renewals of the registration of the two respective marks which plaintiff here seeks to cancel, are not deemed to present an issue which this court should adjudicate, apart from its function to review the Patent Office proceedings.

It is therefore concluded that this contention should be resolved in accord with the decision of the Patent Office and in favor of the defendant Gretsch, both on the questions of abandonment and alleged fraud.

(2) *Plaintiff argues that the secret formula and process practiced by Kerope Zildjian became the property of this plaintiff.*

Since the court is dealing with a secret, the details of which are closely guarded by both parties, nothing can be stated in connection with this argument by way of scientific testimony touching either the elements of the formula or

the necessary steps in the process; this lack of testimony suggests the only approach to decision which is open to the court.

The record is deemed to show that the source, for present purposes, of the formula and process for making the Zildjian cymbals in Turkey was Kerope Zildjian who was the survivor of two brothers who conducted the business (in Constantinople) following the death of their own father, under the style of A. Zildjian & Cie, which was the name used by him. This was in about 1866.

Kerope changed the name to K. Zildjian & Cie and continued the business until his death in 1912. His two sons, Diran and Leon, succeeded him, using the same name, until about 1914 when World War I intervened and interrupted the business. It was resumed by Diran alone in 1918 because Leon had died during the war; Diran himself died in 1920.

The defendants' testimony, being that of Mikail Zilcan (who is a son of Akabi Zildjian, a daughter of Kerope Zildjian), is that the secret formula and process were imparted by Diran to his wife, Hripsime; also that Victoria, the elder daughter of Kerope, also knew both the formula and process. That he Mikail worked for them for many years, assiduously after 1928, and thus finally came into possession of the entire formula and process.

On this subject the argument for the plaintiff is that the secret could not have been so imparted to female relatives and descendants, because that would have been contrary to the family tradition which was that the eldest male relative alone should be entrusted therewith.

Since this is merely argument, it is not deemed to rise to the level of testimony; what Mikail relates on the subject is not to be discredited merely because he should be deemed to be an interested witness. The same of course is true of Avedis.

It is not deemed that Mikail has been discredited as a witness, while his narrative is vindicated in that there has been no testimony offered to controvert what he says, namely that these two women did carry on the K. Zildjian business from 1920 to 1932, with other feminine members of the family; and thereafter until 1936. During all these years Gretsch was selling the cymbals so produced under the said trade marks, which is the practical answer to what the plaintiff says could not have happened.

In 1936 Victoria revealed the formula and process in their entirety to Mikail Zilcan and Vahan Zilcan, who now conduct the business as successors to K. Zildjian, Vahan being the silent partner.

It is not necessary to stop and debate the question of whether Zilcan had good reason to change his name from Zildjian and whether he accomplished the process legally or not, for the fact is that he is doing business today under the name and style above stated, and there is no testimony to the effect that he lacks the legal right to do so.

It is now necessary to revert to 1926, when Aram first appeared on this scene. He was then a man of about 65 years of age who had left Turkey many years prior to that time, and is not shown ever to have been engaged in the manufacture of cymbals.

The evidence does not purport to show that in 1926 Aram knew how to make cymbals according to the Zildjian formula and process. It is true that in that year he formed a partnership with Mikail Zilcan and the latter's brother-in-law, Vahe Indjidjian, in Bucharest, where they started to make cymbals and sell them under the name of A. Zildjian & Cie. Aram's contribution to the partnership was the use of his name only; Indjidjian was to act as salesman, while Mikail was to make the cymbals.

Whatever Aram gathered concerning the formula and process was the result of his watching Mikail, but since the latter did not then possess the complete secret, it follows that Aram's grasp of the subject was limited by what he was able to

understand of what Mikail then knew and practiced.

Mikail said that he had learned both the formula and process while in the employ of Victoria; but he also said that in 1936 when Victoria revealed the secrets to him in their entirety, there were certain details which he had not known and which she then imparted to him.

The Bucharest venture was not a success. A purported sample was sent to Gretsch and resulted in an order for 100 pairs of cymbals, but the sample was not the product of the Bucharest partnership but was a K. Zildjian cymbal, the name upon which was mutilated for the purpose of obtaining the order; when delivery of the said 100 pairs of cymbals was made, they were found to be so inferior, that no further orders could be obtained. It was in connection with the placing of that order that Gretsch entered into the contract which resulted in the registration of the trade mark, No. 228,592, which includes the name "A. Zildjian & Cie." The renewal of that mark was cancelled for the reason that when it was sought, Gretsch was not using the mark and had not for some years, although on the date of issue (June 17, 1927) it is plausible to suppose that the dissolution of the Bucharest partnership had not been effectuated. However that may be, the cancellation of that renewal registration is not before the court, since Gretsch has taken no steps to review the determination of the Examiner in that respect.

In 1928 Aram came to the United States, having acquired the right to use the trade mark, "A. Zildjian" on the dissolution of the Roumanian partnership, and visited his nephew Avedis who was then engaged in the confectionery business; the result was that the partnership which was the defendant in the action resulting in the said consent decree, was formed. Thus the plaintiff's present enterprise was founded, and has since grown and developed. Its cymbals have come into broad distribution; perhaps through trial and error the product has come to be substantially like that of the K. Zildjian Turkish partnership, but since both use a secret formula and process, the question of their respective elements has not come to light.

With regard to the trade mark "A. Zildjian & Co." originally registered in 1927 by Gretsch, bearing No. 228,592, reference should be had to the following provision of the consent decree:

"It is further ordered, adjudged and decreed that, in the event that any of the certificates of registration referred to in this decree, are at any time cancelled, then the defendants may use any of the names or designs so registered."

In view of the cancellation of that trade mark by the Patent Office, it will be seen that this plaintiff, by virtue of the above, is free to use the name or design covered by that registration. Also it appears that under date of July 26, 1932 the plaintiff registered its trade mark shown in Exhibit 3 attached to the complaint, which reads as to the words in the English language:

"Avedis Zildjian Co.
Genuine
Turkish Cymbals
Made in U.S.A."

There is a clear distinction between the above quoted trade mark and the subject-matter of registration No. 228,592 of Gretsch, "A. Zildjian & Cie" on the one hand, and on the other, the enterprise as originally conducted by Kerope Zildjian under the name of A. Zildjian & Cie which he changed to K. Kildjian & Cie. This means that the use by the plaintiff of the title "A. Zildjian & Co." is derived from the Bucharest partnership of 1926, and is therefore not in succession to the trade name and style that Kerope adopted, which included the use of the initial "K" after he had taken over the business from his brother, whose name was Avedis.

Based upon a consideration of all the testimony in the case as it is now before the court, it is found:

1. That the defendant Gretsch is the legal owner of the trade marks covered by original and renewal registration numbers 245,846 and 247,623, and has not abandoned either.

2. That there is no showing either of fraud or abandonment on the part of Gretsch in connection with either the original registrations or the renewals thereof.

3. The provisions of the consent decree dated September 19, 1929 entered in the United States District Court, District of Massachusetts, in the cause in which the Fred Gretsch Manufacturing Co. was plaintiff, and Aram Zildjian, Armand Zildjian (now Avedis Zildjian) and P. Zildjian, co-partners, doing business under the name of A. Zildjian & Co., were defendants, remain in full force and effect.

4. That the trade mark registration obtained by the defendant Gretsch bearing the number 228,592 has been cancelled by action of the United States Patent Office, and by virtue of the provisions of the said decree this plaintiff has the right to use the trade mark therein described.

5. The name "A. Zildjian & Co." is not in fact or in legal effect the same designation as that originally employed by Kerope Zildjian when he first continued the business of his deceased brother, Avedis, but its use is justified on the part of the plaintiff as the successor to the partnership of which Aram Zildjian was a member in 1926.

6. The formula and process employed by the plaintiff in the manufacture of cymbals is secret, and the elements of the formula and the steps in the process are secret.

7. The formula and process employed by K. Zildjian & Co. of Istanbul, formerly Constantinople, Turkey, in the manufacture of cymbals is secret, and the elements of the formula and the steps in the process are secret.

8. The formula and process which Aram Zildjian brought to the United States in 1928 and caused to be practiced in Quincy, Massachusetts, in connection with his partners who are named in the consent decree, was something less and to that extent is different from the formula and process employed by Kerope Zildjian and his successors in the conduct of the enterprise maintained by Kerope Zildjian and those who are in legal succession to him, and who still manufacture cymbals in Istanbul, formerly Constantinople, in Turkey.

The aspect of the controversy involving the Gretsch advertising in Canada is difficult to deal with in view of the statement made by plaintiff's counsel that he understands that the complained of advertising is not now being done, which this court understands to mean that the plaintiff concedes that there is no necessity for decision by the court in that connection.

The answer of the defendant Gretsch contains two counterclaims addressed to these propositions:

(a) The use of "Zildjian" by plaintiff is an infringement of the Gretsch trade mark registrations.

As to this, if the plaintiff's conduct is in violation of the consent decree, that is a fact which should be called to the attention of the court in which the decree was entered.

(b) Complaint is made of the stamping on its product by the plaintiff of the words "Made in U. S. A." as being insufficient to identify the product as of domestic origin. The same remark applies to the necessity for calling this alleged departure from the requirements of the consent decree, to the attention of the court in which it was entered.

(c) The alleged use by the plaintiff prior to the cancellation of registration of trade mark "A. Zildjian" No. 228,592, in contravention of the consent decree. The same comment applies. If the decree of the District Court in Massachusetts was flouted, redress should be sought in that tribunal.

(d) The use of the words "Genuine Turkish cymbals" in more prominent type than the words "Made in U. S. A."

is misleading and constitutes "a fraud upon the public and plaintiff is coming into court with unclean hands." The proof is not deemed to be adequate to sustain the foregoing assertion.

The second counterclaim in effect seeks to secure a decree of this court cancelling the registration in Canada by the plaintiff of the trade mark "Zildjian" on April 29, 1946. That registration is said to have been in violation of the rights of the defendant Gretsch.

The court is asked to enjoin on the part of the plaintiff the sale or advertising of cymbals bearing the words "Zildjian" or "A. Zildjian" or any imitation of the defendant Gretsch's trade marks "likely to be confusing" therewith and "from unfairly competing" with Gretsch.

An accounting is sought in connection with the use of the words "Zildjian" and "A. Zildjian" so far as gains and profits have attended the unlawful sale of the cymbals so marked.

It is not deemed that sufficient has been shown in the testimony offered to this court, to justify affirmative relief in respect of the second counterclaim.

Further Gretsch seeks a direction that the plaintiff be ordered to withdraw its Canadian registration above referred to. It is thought that this aspect of the controversy has been insufficiently litigated in this court, to enable it to frame a decree on the merits.

With regard to unfair competition, it is to be remembered that (as pointed out in the Patent Office decisions), since both parties are legally justified in using the family name Zildjian in the sale of cymbals, a certain amount of confusion is inevitable on the part of the purchasing public. That is a condition which seems not to be remedial by legal fiat. There have been no instances brought to the attention of the court of the palming off by either Gretsch or the plaintiff of the product of the one for that of the other.

It is urged for the plaintiff that the name Zildjian has come to represent a certain grade of cymbals. This is understood to mean that in the minds of purchasers the name has come to identify a distinct type of product rather than a source of origin.

There is no testimony in the record to justify such an assertion, and if a finding of a purely negative character were appropriate, it would be to that effect.

There were reserved for decision plaintiff's motion to further amend the complaint. That is granted.

Also the matter of certain letters passing between Avedis Zildjian and Makail Zilcan was left open for disposition. The plaintiff's objection is sustained, and the court states that it has not read the letters or considered them in any respect.

If there is a pending question as to the answers to certain interrogatories, and perhaps there is (see Record, p. 34), the objections are overruled.

The result is that the defendant Gretsch is entitled to a decree on the merits as against the plaintiff, dismissing the cause as pleaded in the complaint, with costs, and that the counterclaims of the defendant Gretsch be dismissed for failure of proof as to the first counterclaim, and also as to the second, but without prejudice to the right of Gretsch to institute further appropriate litigation confined to that subject-matter, if it be so advised.

Settle decree.