DEP CORPORATION,
Plaintiff-Appellant,

v.

INTERSTATE CIGAR COMPANY, INC.
and L. S. Amster & Company, Inc.,
Defendants-Appellees.

No. 730, Docket 79–7779.

United States Court of Appeals,
Second Circuit.

Argued Feb. 21, 1980.

Decided May 1, 1980.

J. Lawrence Blades, New York City (Finley, Kumble, Wagner, Heine & Underberg, Donald S. Snider, New York City, of counsel), for plaintiff-appellant.

Noel W. Hauser, P. C., New York City, for defendants-appellees.

Before MOORE, MULLIGAN and MESKILL, Circuit Judges.

MULLIGAN, Circuit Judge:

A. & F. Pears Ltd. ("Pears") is a corporation organized and operating under the laws of Great Britain. For more than 100 years it has manufactured Pears Soap (a translucent bar soap) and other products. Pears is the owner of the tradename and mark "Pears" which is registered in the United States. Unilever Export Ltd. ("Unilever") is also a British corporation which has the exclusive right to distribute Pears Soap worldwide except for the United Kingdom, Australia, India and South Africa. On July 1, 1978 Unilever entered into an agreement with appellant DEP Corporation ("DEP"), a California corporation. Under this contract, DEP was appointed as Unilever's exclusive distributor of Pears Soap and, at the option of Unilever, of other Pears products in the United States and Puerto Rico. Shortly after this agreement was entered into, it came to the attention of DEP that the appellees, Interstate Cigar Company, Inc. and L. S. Amster & Company, Inc., related New York corporations collectively referred to hereinafter as "Interstate", were selling Pears Soap in the United States. It is conceded that the source of this soap is not DEP but European middlemen who are able to sell the soap at a price considerably less than that charged by DEP.

On August 20, 1979 DEP commenced an action in the United States District Court

for the Eastern District of New York seeking injunctive relief and damages against Interstate. The first cause of action charged Interstate with trademark infringement in violation of the Lanham Trade-Mark Act of 1946, 15 U.S.C. § 1114 et seq. ("the Lanham Act"), and the second cause alleged common law unfair competition. Jurisdiction over the claims was grounded on the Lanham Act (15 U.S.C. § 1121), on 28 U.S.C. § 1338, and on diversity of citizenship (28 U.S.C. § 1332(a)). On the same day as the complaint was filed DEP sought by order to show cause a temporary restraining order and preliminary injunctive relief. Since no material issues of fact were raised at a hearing on September 5, 1979, trial on the merits was consolidated with the hearing on the preliminary injunction. On September 19, 1979, United States District Judge George C. Pratt denied the preliminary injunction and dismissed the complaint in its entirety. This appeal followed.

## I

The dismissal of the trademark infringement action under the Lanham Act was based upon a finding that DEP lacked standing since it was not the owner of the trademark. It is undisputed that Pears is the owner of the trademark and has registered it in the United States. It is not a party to this action, nor did it enter into any agreements with DEP. Whatever interests DEP has in this matter are governed by its agreement with Unilever, the terms of which are quite explicit:

> You [DEP] shall not during the continuance of this arrangement or thereafter have or claim any right whatsoever whether of user or otherwise to or in any such trade marks, trade names or brands used in connection with Products. . . In the event of any infringement of any such trade marks, trade names or brands coming to your notice, you shall promptly notify us and shall take at our expense such steps as we may reasonably require for their protection.

(paragraph 6 of the Unilever-DEP agreement). Whatever rights Unilever may have to the Pears trademark do not appear in the record and Unilever is not a party to this action.

The Lanham Act (15 US.C. § 1114(1)) provides that an action for trademark infringement may only be brought by the "registrant," and further defines that term to include the legal representatives, predecessors, successors and assigns of the registrant. (15 U.S.C. § 1127). However paragraph 6 of the agreement, set forth *supra*, clearly provides that DEP has no rights whatsoever to or in the Pears trademarks, tradenames or brands. In the face of such explicit language, it is obvious that Pears is not an assignee expressly or impliedly of the trademark allegedly infringed by Interstate.[1] In fact, the Lanham Act precludes the assignment of a registered trademark unless it is assigned with the good will of the business in which the mark is used, or with that part of the good will connected with the use of and symbolized by the mark. The assignment must further be in

1. It does appear anomalous in any event that a trademark infringement action would lie here where the soap sold by Interstate is in fact genuine and not spurious. It is conceded that there is no difference between the product sold by DEP and that sold by Interstate. There is no reproduction, counterfeit, copy, or colorable imitation of the Pears mark and hence no public confusion as to the source of the goods. DEP relies on *A. Bourjois & Co., Inc. v. Katzel*, 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464 (1923) for the proposition that a trademark infringement action may be appropriately brought against one who is selling goods which are genuine in origin and create no confusion as to their source. The court below accepted this position. However, we need not reach that issue here since DEP clearly has no standing to assert that the Pears mark has been infringed. DEP has not purchased the Pears business and has no interest at all in the Pears mark. In *Katzel*, a French company sold to the plaintiff its entire business in the United States, including good will and trademarks. The plaintiff brought a trademark infringement action against a defendant who bought a large quantity of the French company's product in France and sold it in the United States in packages closely resembling those used by the plaintiff. There the plaintiff clearly had standing to assert a trademark infringement claim.

writing. (15 U.S.C. § 1060). There is obviously no sale here of the Pears business or good will and in fact the only writing we have seen negatives any interest whatever by DEP in the Pears mark.

Appellant relies upon *G. H. Mumm Champagne v. Eastern Wine Corp.*, 142 F.2d 499 (2d Cir.), cert. denied, 323 U.S. 715, 65 S.Ct. 41, 89 L.Ed. 575 (1944) which held that the exclusive distributor in the eastern part of the United States of a French company's trademarked champagne had standing to bring a trademark infringement action against another domestic corporation which had imitated the foreign producer's distinctive mark. We note initially that this case was decided before the Lanham Act became effective. As we have already pointed out, a trademark infringement action may only be brought under the Act by the registrant or by his legal representative, predecessor, successor, or assignee. DEP fits none of these categories with respect to Pears. Moreover, *G. H. Mumm Champagne* is distinguishable from the instant situation since in that case the French company, which was not a party to the action by reason of its enemy alien status in World War II, had organized the domestic distributor plaintiff and owned 53% of its common stock and all of its preferred stock. 142 F.2d at 500. Further, according to the facts set forth in the district court opinion, the domestic distributor had been designated by the French company as the party upon whom process or notice of proceedings affecting the right to ownership of the trademark under the laws of the United States might be served. 52 F.Supp. 167, 168 (S.D. N.Y.1943). In the case at hand, DEP has no relationship at all with Pears, but rather only with Pears' major distributor, Unilever. Finally, we note that the contract between the French trademark owner and its domestic distributor in *G. H. Mumm Champagne* contained a clause similar to one quoted *supra* from the agreement between DEP and Unilever to the effect that the distributor shall notify the trademark owner of any conduct constituting infringement, and the trademark owner will determine what steps should be taken to protect its rights. However, an additional clause in the contract in the instant case flatly asserts that DEP has no claim or right whatsoever in the Pears mark, thus completely negating DEP's interest in the trademark and hence its standing to sue for infringement.

DEP also relies upon dictum in *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154, 159 (1st Cir. 1977) that "trademark infringement suits [may] be maintained by *exclusive* distributors and sellers of trademarked goods, *i. e.*, 'exclusive licensees' who had a right by agreement with the owner of the trademark to exclude even him from selling in their territory."[2] (Emphasis in original). Here of course there is no licensing arrangement between Pears and DEP. On the contrary, the crucial point remains that there is no contract between Pears and DEP, and the agreement between DEP and Unilever denies the former any property interest in the trademark

---

**2.** The cases cited for this proposition in *Quabaug Rubber Co.* are inapposite. *G. H. Mumm Champagne v. Eastern Wine Corp.*, supra, we have already distinguished. *Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp.*, 350 F.Supp. 1341 (E.D.Pa.1972), aff'd per curiam, 480 F.2d 917 (3rd Cir. 1973) involved a plaintiff who was not only a sole user of a British company's mark in the United States on some products, but was also a wholly-owned subsidiary of the British company. (See 15 U.S.C. § 1055). In *Browne-Vintners Co., Inc. v. National Distillers and Chemical Corp.*, 151 F.Supp. 595 (S.D.N.Y.1957), while the court did state that an exclusive distributor had a sufficient interest of its own in the marks to entitle it to register them in its name, we note that the registered trademark owner and a related company (15 U.S.C. § 1055) were also parties plaintiff. There is nothing in the opinion to indicate that the distribution agreement expressly provided, as in the instant case, that the distributor would have no right in the mark. *Ste. Pierre Smirnoff, FLS., Inc. v. Hirsch*, 109 F.Supp. 10, 12 (S.D.Cal.1952) is cited in *Quabaug Rubber Co.* as authority for the proposition that an exclusive licensee is an assignee under 15 U.S.C. § 1127, 567 F.2d at 159 n.8. However, in that case the plaintiff was the owner of the entire exclusive and irrevocable right in the business, its good will and the trademark in question. The court in *Hirsch* noted that the plaintiff was an assignee and not a mere licensee.

624

at issue. DEP's claim therefore that it has the right to exclude Pears from selling its products in the United States is not persuasive.

■ DEP also argues that since it is losing sales by reason of the activities of Interstate it logically has the greatest interest in bringing an infringement action. However, this factor hardly creates standing under the Lanham Act.[3] Since Interstate has not engaged in "palming off" here and since DEP has no property right in the Pears trademark, we hold that the district court properly dismissed count one of the complaint and those diversity actions based upon trademark infringement. *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc., supra,* 567 F.2d at 160.

■ DEP's second cause of action, however, does allege in paragraphs 19 and 22 that Interstate has interfered with DEP's enjoyment of its exclusive distribution contract. Even absent any property rights in the trademark, it may well be that DEP has an action based upon a theory of intentional interference with contract relations. See *Metropolitan Opera Association, Inc. v. Wagner-Nichols Recorder Corp.,* 199 Misc. 786, 802–03, 101 N.Y.S.2d 483 (Sup.Ct.N.Y. Cty.1950), aff'd, 279 App.Div. 632, 107 N.Y. S.2d 795 (1st Dept. 1951); Restatement (Second) of Torts § 766A; W. Prosser, Law of Torts § 129 (4th ed. 1971). This point was not discussed in the district court opinion below. Since there are no relevant findings of fact or conclusions of law before us here, we express no view now as to the merits of such a claim. We remand this matter to the district court for further consideration of this issue.

Accordingly, the judgment of the district court is affirmed except insofar as it dismissed that part of the complaint alleging intentional interference with a contract. The case is remanded to the district court for consideration of that claim.

---

**3.** Had Interstate falsely designated or described the Pears Soap in violation of 15 U.S.C. § 1125(a), then a competitor who is or is likely to be damaged would have standing to bring a false advertising action under the Lanham Act. This is in marked contrast to the trademark infringement action under 15 U.S.C. § 1114(1) which limits standing to registrants.