## MYLES STANDISH MFG. CO. v. CHAMPION SPARK PLUG CO. *

## CHAMPION SPARK PLUG CO. v. MYLES STANDISH MFG. CO.

(Circuit Court of Appeals, Eighth Circuit. May 15, 1922.)

Nos. 5811, 5851.

1. Patents ⬤⟹328—1,180,799, claims 1, 3, and 6, for spark plugs, as limited, held valid and infringed.

The Stranahan patent, No. 1,180,799, claims 1, 3, and 6, for spark plugs for internal combustion engines, *held* limited to a plug having a flanged gasket, which, in combination with certain common types of cores and shells, has the effect of readily centering the core in the shell, but, as so limited, to possess utility and not anticipated; also *held* infringed.

2. Patents ⬤⟹318(1), 319(1)—Patentee may recover profits, though share due to infringing device is small part of entire profit.

A patentee may recover the profits derived from an infringer's use or sale of his invention or damages for the use, though the share of the profits to which he may be entitled may be a small part of all the profits derived from the use or sale of the infringing device.

3. Trade-marks and trade-names and unfair competition ⬤⟹68—Sale of spark plug cores for use in plaintiff's shells not unfair competition.

Unfair competition cannot be predicated on the sale of spark plug cores made to fit plaintiff's shells, and sold for replacing broken or worn-out cores of plaintiff's plugs.

4. Trade-marks and trade-names and unfair competition ⬤⟹68—Manufacturer of spark plugs used by automobile manufacturer entitled to enjoin others from selling theirs as factory equipment.

A manufacturer of spark plugs is entitled to the exclusive advertising advantage derived from the fact that its plugs are used by an automobile manufacturer as its factory equipment, and is entitled to enjoin the use in the sale of other plugs of expressions calculated to make the ordinary purchaser think they are used by the automobile manufacturer as factory equipment.

5. Trade-marks and trade-names and unfair competition ⬤⟹68—Sale of spark plugs as "standard" plugs for certain cars held unfair competition, as against manufacturer of factory equipment.

The sale of spark plugs as "standard spark plugs for Fords" constitutes unfair competition, as against the manufacturer of the plugs constituting factory equipment for Ford cars, though the word "standard" has a well-defined meaning in the automobile trade as referring to the size of the plug, where its use would probably deceive ordinary purchasers into thinking the plug was factory equipment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Standard.]

6. Trade-marks and trade-names and unfair competition ⬤⟹68—Use of name of automobile in selling spark plug cores held unfair competition, as against manufacturer of factory equipment.

The use of the expression "Ford core," in the sale of spark plug cores, constitutes unfair competition, as against the manufacturer of spark plugs and cores used as Ford factory equipment.

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied October 30, 1922.

7. **Trade-marks and trade-names and unfair competition** &#x29d7;68—**Not unfair competition to state spark plugs can be used in Ford engines.**

It is not unfair competition, as against the manufacturer of spark plugs constituting factory equipment for Ford engines, for a seller of other plugs to state that they can be used in Ford engines.

8. **Trade-marks and trade-names and unfair competition** &#x29d7;68—**Defendant cannot convey impression that its spark plug cores are of plaintiff's manufacture.**

A seller of spark plugs and cores, intended for use in replacing broken and worn-out cores of plaintiff's spark plugs, cannot use any expression or do any act conveying the impression that its plugs and cores are of plaintiff's manufacture.

9. **Appeal and error** &#x29d7;78(1)—**Decree ordering accounting as to damages not final as to disallowance of profits.**

A decree finding for plaintiff on the issues of infringement and unfair competition, and ordering an accounting for damages and profits for infringement, and damages only for unfair competition, is not final as to the disallowance of profits from unfair competition so as to support an appeal by plaintiff, under Judicial Code, § 128 (Comp. St. § 1120).

Appeals from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Suit by the Champion Spark Plug Company against the Myles Standish Manufacturing Company. Decree for plaintiff, and defendant appeals, and plaintiff brings a cross-appeal. Cross-appeal dismissed, and decree modified and affirmed.

Henry M. Huxley, of Chicago, Ill. (George L. Wilkinson, of Chicago, Ill., on the brief), for Myles Standish Mfg. Co.

A. C. Paul, of Minneapolis, Minn., and Wilber Owen, of Toledo, Ohio, for Champion Spark Plug Co.

Before SANBORN, STONE, and LEWIS, Circuit Judges.

STONE, Circuit Judge. The Champion Spark Plug Company brought its complaint against the Myles Standish Manufacturing Company upon two counts. The first cause of action, as tried, was for infringement of claims 1, 3, and 6 of Stranahan, No. 1,180,799 (April 25, 1916), covering spark plugs for internal combustion engines. The second count was for unfair competition in the sale of certain spark plugs and spark plug cores.

The defenses to infringement were invalidity of the patent, because of anticipation and of lack of novelty, and noninfringement. The unfair competition was denied. The court entered an interlocutory decree which sustained the three claims of the patent, found infringement and unfair competition, enjoined both, and ordered an accounting to ascertain profits and damages for infringement and damages for the unfair competition. The Standish Company has appealed (No. 5811) from this entire decree, and the Champion Company has cross-appealed (No. 5851) from that portion of the decree allowing an accounting in respect to unfair competition only for damages, and not for profits, as well.

---

&#x29d7;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

## Standish Company Appeal.

This appeal embodies the sustaining of the patent and the infringement thereof as to the first count, and the finding of unfair competition as to the second count.

[1] The patent, here involved, covers certain features of spark plugs. The power in gasoline engines is obtained through explosions, within cylinders, of gasoline gas under compression. The explosion is caused by an electric spark, which is produced within the cylinder gas chamber. This spark is obtained through a device called a spark plug which screws into the cylinder case, and extends the firing end into the gas chamber. The electric current is conducted through an electrode, located in the plug and surrounded by insulating porcelain or mica. This electrode with its insulation is called the "core." This core fits into a metal "shell" which holds the core tightly in proper position. In some plugs the core is solidly built into the shell and is not removable. However, in a large class of plugs the core is readily removable. In the removable type the general method of holding the core in place is as follows: The shell is composed of two parts which screw together holding the core firmly between them. The inner end of the electrode is exposed and located at such distance from an electrode on the shell so that the passage of the current through the core electrode causes a spark across this gap and thus explodes the gas.

The problems of every character of spark plug are two: To keep the current-carrying electrode perfectly insulated, and to keep the firing points properly spaced to secure the most perfect spark. Where the spark plug has a removable core there is the additional problem of making the junction points of core and shell gas-tight. There are other, less important, construction problems, but those just enumerated are vital to the efficiency of a spark plug. The universal method of securing the gas-tight juncture is by the use of gaskets at one or both of the two contact points between the core and shell. The problem of fire-point spacing is concerned with the proper centering in the plug of the core electrode. This is largely accomplished through the corresponding shapes of the core and the shell within which it fits.

Spark plugs, with removable cores, were not new when Stranahan entered the art. His patent was directed to improvements therein. The objects which he expected to accomplish by his patent were, as stated in the application, the "provision of improved means for firmly and closely holding the porcelain within the shell without injury to the porcelain, and for preventing the escape of gases around the porcelain," and to provide a gasket "provided with means for insuring a perfect centering and seating" of the core.

The claims here involved are 1, 3, and 6. Claim 1 is for a combination with a core and shell—

"having co-operating shoulders and being relatively spaced one from the other, of a gasket having an annular transversely projecting seat portion for coaction with said shoulder and having end portions projected in opposite directions substantially lengthwise of the gasket axis from the inner and

outer edges of said seat portion, with one end portion fitting the core and the other end portion fitting the shell bore."

Claim 3 is for a combination with core and shell—

"of a gasket having one end portion in centering contact with the shell and its other end portion in centering contact with the porcelain and having a portion intermediate said end portions which is gripped between respective portions of the shell and porcelain."

Claim 6 is for a combination with core and shell—

"of a gasket having one edge portion restricted with respect to the shell and in centering engagement with the porcelain, and its other edge portion enlarged relative to the porcelain and in centering engagement with the shell and having an intermediate part gripped between the shell and porcelain."

A study of these claims impresses the conclusion that the element relied upon by Stranahan to attain his avowed objects was the flanged form of gasket having a centering effect. This view is confirmed by the statement in his application that:

"The provision on each gasket, or either of them, of a flange, which projects from an edge thereof lengthwise of the shell, is a most important feature in connection with the seating and maintaining of a gasket in true centered relation with respect to the shell and porcelain and thereby preventing a porcelain from being secured in lop-sided position within the shell or with its axis out of true parallelism with the axis of the shell, in which lop-sided position the porcelain may have contact with the metal of the shell. It is found in practice that a tighter and more perfect joint is not only provided between the seating parts of a spark plug by maintaining a gasket in centered position therein, but also that the air space between the shell and porcelain is maintained entirely there around so that the porcelain is not liable to be injured by having contact with the metal of the shell. It will be noted that the adjacent flanges of the gaskets 12 and 13 fit against the wall of the shell opening, thereby maintaining the gaskets in true centered relation to the shell."

This is confirmed by the file wrapper. All of the claims of the patent, as originally applied for, were rejected. Regarding original claims 3 and 4 the Examiner said:

"There would be no invention to have a flange on the packing in view of Benoist, 898,427, September 15, 1908."

The rejection of claims 5, 6, and 7 was on the ground that they—

"do not bring out that the flanges fit the bore of the bushing. Therefore their utility as centering means is not properly defined. The claim is answered by Mosler, in view of Benoist."

In submitting the first amendment of the claims, the applicant differentiates the references cited by the Examiner on the ground that:

"It is not found in any of the reference patents that the gaskets have the centering action with respect to the shell and porcelain that is the case with applicant's gaskets."

Applicant also there says:

"In the assembling of spark plugs it is found very important to provide a gasket which will operate to center the porcelain within the shell so that when the shell is tightened or fixed to the porcelain the axes of both will stand in parallel relation. The Champion Spark Plug Company, which is the assignee of the invention herein, is the largest manufacturer of spark plugs in the

world, and it was to overcome the objections incident to the use of the forms of gaskets, commonly employed that the present gaskets were devised."

This amended application was rejected because:

"Claims 1 and 2 are not patentable over Mosler, 698,042, April 22, 1902 (123–169), from which the present device differs only in the degree to which the gaskets are extended around the porcelain.

"Claims 3, 4, 5, 6, 7, and 8 are answered by the same reference; the invention, if any, being in the packing, not in the combination."

In submitting a second amended application, the applicant stated:

"As stated in the last amendment it is very important in the rapid assembling of spark plugs to have some self-centering means, as without such means extreme care must be taken to secure the porcelain or interior insulating member in proper centered relation within the shell."

"The Examiner has failed so far to find any spark plug reference in which a gasket is shown as having one edge in centering engagement with the porcelain and its other edge in centering engagement with the shell as called for by applicant's claims. It will be noted that some of applicant's claims refer to a gasket as having a cushioning portion and being provided with extensions or portions at opposite sides of the cushioning portion, which coact, one with the porcelain and the other with the shell to center the porcelain therein. This centering feature also facilitates assembling by reason of the gasket being held in proper seating relation to both the porcelain and shell so that when the parts are tightened the gasket will be seated in true centering relation to the shell and porcelain."

The Examiner rejected all of the nine claims of this amendment except claims 2, 8 and 9, which were allowed.

A third amendment was submitted which incorporated some changes in claims 1, 3, and 6, and resubmitted the rejected claims 2, 4, 5 and 7. The amendment as to 3 was to—

"bring out more clearly that it is the opposite end portions of the gasket which have centering contact with the shell and porcelain, respectively."

As thus presented, claims 2, 4, and 5 were allowed; claim 1 was rejected as indefinite; and claims 3 and 6, as "met by Schmidt, 980,566, January 3, 1911."

A fourth amendment was presented. This substituted the present form for claim 1; amended claim 3, by adding thereto, "and having a portion intermediate said end portions which is gripped between respective portions of the shell and porcelain"; amended claim 6 by adding thereto, "and having an intermediate part gripped between the shell and porcelain." Upon this amendment, there was an allowance of claims 1 to 7, inclusive, and rejection of claims 8 and 9 on reference.

For the fifth time the matter was presented, on claims 8 and 9 unamended, and the patent finally allowed with the nine claims.

From the application and from the file wrapper it is clear that this patent is a very narrow one and the new element is confined to a flanged gasket which, in combination with certain common types of spark plug cores and shells, has the effect of readily centering the core in the plug. Having this scope of the patent in mind, we enter the prior art to test, first, whether there is anticipation; second, whether, if there be no anticipation, there is patentable novelty.

On the point of anticipation; there were cited, and here discussed, 19 patents, as follows: Mosler, No. 698,042; Mosler, No. 738,831; Pebbles, No. 917,651; Yost, No. 1,132,060; Jeffery, No. 1,174,157; Jeffery, No. 1,174,158; Jacobson No. 774,432; Ottaway, No. 809,578; Mills, No. 825,856; Benoist, No. 898,427; Cherry, No. 962,314; Seeley, No. 978,494; Schmidt, No. 980,566; Schmidt, No. 999,343; Dayton, No. 1,001,363; Maher, No. 1,007,466; Johnston, No. 1,061,915; Henn, No. 1,073,043; Meyer, No. 1,079,790. Examination of these patents reveals that the art had well known the general construction of two-part shell, porcelain-shouldered core and gaskets, or washers, as cushions between the porcelain core shoulders and the shell parts. Practically all of the above citations exhibit these features. Only four of them in any way hint at the "flanged" gasket of the Stranahan patent. These four are Schmidt, 980,566, Meyer, 1,079,790, and the two Jeffery patents, 1,174,157 and 1,174,158. A careful examination of each of these four "collars" or "rings" does not suggest the flanged gasket of Stranahan. We think there is no anticipation from any of the citations. The novelty of the patent, when thus narrowly restricted to the peculiar form of the upper gasket, is established.

There remains, concerning the patent, the question of its utility. The appellant contends that it performs no function; that the plugs "center" in the shells without any assistance from the flanges on the gasket. It seems clear that "centering" the core is a matter of some importance. The purpose of proper "centering" of the core is:

"So that under conditions in which the plug operates in the engine, the rapid change in temperature, the various strains will be equalized; whereas, if the core were lop-sided, * * * the pressure of different points of the core would be quite unequal, due to expansion and contraction in heating and cooling."

There is also the strain on the core from the explosions in the cylinders. By equalizing and distributing these pressures upon the porcelain core, it is much less likely to crack and become electrically leaky. The importance of "centering" the core seems sufficiently established. As to whether the flanges on this flanged gasket aid in this centering is in dispute. This appellant contending that the ordinary gaskets without flanges will perform that function, and take up inequalities which may arise, in course of manufacture, at the seating points of the core and shell. The evidence on this point seems to establish that there is a small variance at these seating points, which occurs not infrequently in the commercial manufacture of plugs, particularly where large numbers are rapidly made; that good ordinary gaskets will take up much of this inequality and center the cores fairly well; that the flanged gasket has, in actual use, reduced the percentages of noncentering cores. We think utility has been shown, and therefore conclude that the patent is valid.

As to infringement. The gasket put out by appellant had the same metal-flanged construction and was used in the same place and manner as that covered by the patent and manufactured by the appellee. It differed only in the fact that it lacked the underlying ring of asbestos used by appellee. This is a difference affecting the cushioning of the

core, but not the "centering." The "centering" is affected by the metal part of the gasket. We think infringement has been shown.

[2] If there is any doubt about the right of complainant in this suit to a recovery of the profits derived from the defendant's use or sale of its invention or to damages for the use, because the share of the profits to which the inventor may be entitled may be a small part of all the profits derived from the use or sale of the infringing device, it should be resolved by the opinion of the Supreme Court in Westinghouse Co. v. Wagner Electric Mfg. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653. Speaking of the fund derived partly from the use of an infringing device, the Supreme Court said that the liability of the infringer is not—

"limited to those cases where the patented device is shown to have preponderated in the creation of the profits. The owner of a small part of the fund is as much entitled to the protection of the law as the owner of a larger share."

[3] As to unfair competition. The testimony is sufficient to establish that appellant's plugs are put in the trade in a way that would easily deceive a purchaser. The Champion Company complains of many acts which it claims constitute unfair competition. These include the form and appearance of the plug and the core, the printing and cuts upon the cartons, and methods of selling. As to the form and appearance of the plug and core and their physical appearance, the contention is not well founded because numerous physical exhibits here show that the general appearance and form of the plug and core are very similar to, if not identical with, many other makes of plugs long on the market. Nor can fault be found that the cores of the Standish Company were made to fit the shells of the Champion plugs and are sold as doing so. These cores are not patented. They are subject to breakage and replacement. The fact that one company makes the shell gives them no right to have no core made by others used therein after the shell has been sold.

[4–8] As to the cartons and advertising matter put out by defendant, the contention revolves around certain statements referring to use of the plugs in Ford engines. For years, the Champion plugs have constituted the factory equipment of Ford engines. Because of the large number of Ford cars, and the popular conception that the Ford Company would choose a good spark plug for the factory equipment of its cars, this usage is of substantial value to the Champion Company. To secure this advantage it has, for years, furnished these plugs to the Ford Company at less than cost. It has featured this usage in its advertising and it is entitled to the exclusive advantage thereof. On the other hand, practically any half-inch size spark plug will fit and work in a Ford engine, and any owner of a Ford car can substitute for a worn-out or unsatisfactory plug, coming in the car from the factory, any plug he desires. While the advertisements and cartons of defendant have never, in so many words, set out that defendant's plugs were factory equipment for Ford cars, it has used expressions, such as "standard spark plug for Fords," which are calculated to make the ordinary purchaser think such plugs are used by the Ford Company for factory equipment.

It may be, as contended by defendant, that the word "standard" refers to the size of the plug and has a well-defined meaning, as such, in the automobile trade. That is no defense or justification if the use of it in this connection will probably deceive the ordinary purchaser into thinking he is purchasing the factory equipment plug. It is not the trade meaning, nor even the dictionary meaning, of a term or expression, which governs in unfair competition cases. It is the meaning which, under the condition and circumstances usually attending sales, would be conveyed to the ordinary purchaser of the article in question. In this respect, the law is the same as in cases of misbranding or mis-labeling. See Royal Baking Powder Co. v. Emerson (C. C. A.) 270 Fed. 429, 435. In our judgment, the use of the word "standard" as here used is deceptive. The expression "Ford core," as here used, is also objectionable. While it is useful to the parties it is not always advisable for the court to undertake to define in detail the precise limits within or without which the defendant can safely act in its competition. It is often the wiser course to lay down general lines. The general rule to be applied in this case in respect to all of the claimed unfair acts is that defendant is free to state that its plugs can be used in Ford engines and that its cores can be used in Champion plugs but it must not use any expression or do any act which will convey to the ordinary purchaser the impression that its plugs and cores either are of Champion manufacture or are used as Ford factory equipment. An important consideration in the scope of application of this general rule is that the evidence establishes and the court found that the defendant acted with the intention of causing the buying public to believe its plugs were made by complainant and were the factory equipment plugs used by the Ford Company. We approve, therefore, the application of this rule as made by the trial court in paragraphs 11 and 12 of its order.

### Champion Company Appeal.

The cross-appeal of the complainant presents the question of whether the decree as to accounting for unfair competition should have allowed profits as well as damages.

[9] A motion to dismiss this cross-appeal has been here filed, based on the ground "of lack of jurisdiction, by reason of the fact that said cross-appeal does not come within the provisions of either section 128 or section 129 of the Judicial Code." Comp. St. §§ 1120, 1121. Section 128 regulates appeals to this court from final decrees in the District Court. Section 129 regulates appeals from interlocutory decrees of injunction or receivership. The cross-appellant bases no right to this appeal upon section 129 but contends the decree is, in this respect, final as to it.

This decree, made after a hearing upon the merits, declared the validity of the patent, infringement thereof, the existence of unfair competition, and the right to recover on account both of infringement and of unfair competition. As to the infringement, it allowed recovery both for damages and profits. As to the unfair competition

it allowed recovery of damages only. It then referred the matter to a special master—

"to take an account of defendant's profits as to the first cause of action herein [infringement] and plaintiff's damages as to both causes of action herein and to assess the same and to report thereon to this court."

It, also, provided:

"That the question of increase of damages under the first cause of action, and all further questions, be reserved until the coming in of the master's report."

The very recent case of Simmons Co. v. Grier Bros. Co., 258 U. S. 82, 42 Sup. Ct. 196, 66 L. Ed. —— (decided by the Supreme Court, February 27, 1922), to which our attention has been, with commendable consideration, called since the argument by counsel for the cross-appellant, seems to definitely settle that this decree is not final within the meaning of section 128. To the same effect is Ex parte National Enameling Co., 201 U. S. 156, 26 Sup. Ct. 404, 50 L. Ed. 707, where a cross-appeal, presenting the same legal situation as here, was dismissed for want of jurisdiction. The motion to dismiss the cross-appeal is sustained.

The order is that the cross-appeal be dismissed for want of jurisdiction; that the decree be modified to require recovery on account of infringement to be confined to usage of the flanged gaskets; and that, as so modified, the decree be affirmed without prejudice to the complainant to apply to the trial court, at any time before final decree therein, for a modification of its order denying recovery of profits on account of unfair competition.