**B. H. BUNN CO., Inc., Plaintiff-Appellant-Cross Appellee,**

v.

**AAA REPLACEMENT PARTS CO., Inc., et al., Defendants-Appellees-Cross Appellants.**

**No. 71–1199.**

United States Court of Appeals, Fifth Circuit.

Nov. 16, 1971.

8. See § 2035(b), note 2, *supra.*

Owen Rice, Jr., Tampa, Fla., Horton, Davis, McCaleb & Lucas, William E. Lucas, Malcolm McCaleb, Chicago, Ill., Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for plaintiff-appellant.

Stefan M. Stein, Tampa, Fla., for defendants-appellees.

Before GEWIN, GOLDBERG, and DYER, Circuit Judges.

GOLDBERG, Circuit Judge.

We enter here the rather swampy area of unfair competition, an area already substantially staked out by the federal protective laws of patent and trademark. In the principal issue of this case the court below found both appellees, Caravalla and Leto, not guilty of patent or trademark infringement, but found appellee Caravalla liable for unfair competition and granted injunctive relief. Leto was exculpated from charges of unfair competition. Although our footings are not granitic and require extensive detailing, they are firm enough to lead us to affirm in part and remand in part.

Unfair competition is an amorphous but not an altogether vaporous area of the law. As the Supreme Court has made clear in two rather recent cases, unfair competition does not take up where statutory protection given to originality lets off. Compco Corp. v. Day-Brite Lighting, Inc., 1964, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669, reh. denied, 1964, 377 U.S. 913, 84 S.Ct. 1162, 12 L.Ed.2d 183; Sears, Roebuck & Co. v. Stiffel Co., 1964, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, reh. denied, 1964, 376 U.S. 973, 84 S.Ct. 1131, 12 L.Ed.2d 87. The patent and copyright laws exist to prevent copies from being produced at all, without the consent of the registered holder. It runs counter to federal purposes, and perhaps borders on the

unconstitutional, for a state to prolong or to create any trade monopoly to an originator by forbidding the production of copies under the rubric of unfair competition. U.S.Const. Art. I, § 8; U.S.Const. Art. VI; *see* Compco v. Day-Brite, *supra*; Sears, Roebuck & Co. v. Stiffel, *supra*. What is left to the state laws lies in the tort realm of deceit. As Judge Learned Hand stated:

> "The whole basis of the law of 'unfair competition' . . . is that no one shall sell his goods in such a way as to make it appear that they come from some other source. The simplest form of this is to use the name or trademark of another, but the law goes further than that."

American-Marietta Co. v. Krigsman, 2 Cir. 1960, 275 F.2d 287, 289.

Outright copying is often a civilizing rather than a cannibalizing folkway. The world would be a duller place without the originators, but it would not work without the copyists. Even so, the law has bounded the monopoly of patent originality without giving blank approval to deceptiveness. Whatever the legal competitive rights one might have to copy and to sell the works originated by another, the copyist, if state law so requires, cannot "palm off" his copied goods as the genuine goods of the originator, to the deceit of the purchasing public:

> "A State of course has the power to impose liability upon those who, knowing that the public is relying upon an original manufacturer's reputation for quality and integrity, deceive the public by palming off their copies as the original."

Compco v. Day-Brite, *supra*, 376 U.S. at 238, 84 S.Ct. at 782. Whether or not there has been unfair competition, despite a lack of technical infringement of patent or trademark laws, is a mixed question of law and fact, each case turning essentially on its own base. Creamette Co. v. Conlin, 5 Cir. 1951, 191 F.2d 108. The set of facts for this case is, briefly, as follows:

Plaintiff Bunn Company, Inc., is an Illinois corporation that manufactures and markets automatic tying machines for tying packages and bundles with twine. In addition to some 50 patents on its machine, Bunn also holds a registered trademark, a "knot" looped over a horizontal line. For about thirteen years defendant C. Gus Caravalla was a sales and service representative for Bunn in Florida. Following his dismissal in 1964 Caravalla began to manufacture and sell replacement parts "to fit" the Bunn machines, but he manufactured the parts without Bunn specifications or drawings. He also kept and continued to sell the stock of genuine Bunn parts that he had on hand when discharged. Some of Caravalla's own make of parts were imprinted with an ampersand ("&").

As a result of Caravalla's post-1964 activities, Bunn sued Caravalla in a federal district court in Florida, asking both damages and equitable relief. Bunn alleged that Caravalla was not only infringing Bunn's patents and trademark, but was also engaged in the Florida tort of unfair competition. Caravalla raised as defenses certain antitrust violations by Bunn and the invalidity of some of Bunn's patents. In addition, Caravalla counter-claimed for alleged interference with a business relationship.

Subsequent to the filing of Bunn's suit Caravalla leased certain property, consigned his inventory, and sold other property to defendant Sam S. Leto, Jr., who was doing business as both Tampa Brass and Automatic Tying, enterprises incorporated in Florida. Precisely what Caravalla sold to Leto is in dispute, but it is clear that Caravalla is no longer in the trade and that Leto is, using Caravalla's inventory, Caravalla's shop, and many of Caravalla's techniques. Leto is now making and selling, also without Bunn specifications or drawings, replacement parts for Bunn machines. Therefore, Bunn joined Leto and his corporations as defendants to the claim of unfair competition.

After trial on the merits the district court found that there had been neither patent nor trademark infringement. While the trial court held Caravalla liable in tort for unfairly competing against Bunn, the complaint against Leto was dismissed. Finally, the court rejected Caravalla's counter-claim for interference with a business relationship. Caravalla presented no evidence regarding the alleged antitrust violations or invalid patents, and the district judge dismissed them as defenses. That dismissal was not appealed. The district judge issued an injunction against Caravalla and postponed a hearing on damages pending appeal. Bunn appeals the decisions regarding infringement and the dismissal of the claim against Leto. Caravalla appeals the finding of unfair competition and the dismissal of his counter-claim.

■ Both appellants come to us primarily under the aegis of Rule 52(a), F.R.Civ.Proc. Under this Court's interpretation of Rule 52(a), to be "clearly erroneous" a finding of fact must leave us with the "definite and firm conviction that a mistake has been committed." Chaney v. City of Galveston, 5 Cir. 1966, 368 F.2d 774. We do not have a "definite and firm conviction" that the district court was mistaken in its findings regarding patent infringement, trademark infringement, unfair competition with regard to Caravalla, and Caravalla's counter-claim. Nor do we think that the court committed any error of law in its conclusions and rulings on those matters. Those rulings are affirmed. However, we are left in doubt with regard to the dismissal of the unfair competition claim against Leto. We do not have before us any specific findings from the trial court that might distinguish Leto and Caravalla, and we find the record silent or

unclear on a number of important questions. Being unable to evaluate the facts, we are unwilling to approach the questions of law. In addition, we find that the injunctive relief granted to Bunn against Caravalla is too broad. Therefore, we remand these two matters to the district court.

## I. THE PATENT CLAIM

■■ Bunn holds patents on the tying machine as an entirety, but not on all of its component parts. It is settled in patent law that a patent on the whole device does not bestow patents on the component parts; to do so would clearly extend the patent law well beyond its intent, even by pre-*Sears/Compco* standards. Copying an unpatented part of a patented combination is not a direct infringement. United States Industries v. Otis Engineering Corp., 5 Cir. 1958, 254 F.2d 198. If not a direct infringement, then copying a part cannot be an indirect infringement. Aro Mfg. Co. v. Convertible Top Replacement Co., 1960, 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592, reh. denied, 1960, 365 U.S. 890, 81 S.Ct. 1024, 6 L.Ed.2d 201. However, a copy may still be a "contributory" infringement of a patent if it is knowingly produced for reproduction of an infringing combination, rather than for repair of existing machines. Wilson v. Simpson, 1850, 9 How. 109, 13 L.Ed. 66; Aro Mfg. Co. v. Convertible Top, *supra*.[1] Bunn argues that contributory infringement is Caravalla's trespass on the patent laws.

Whether or not the parts manufactured by Caravalla were intended for repair or for reconstruction is a mixed question of fact and law. Aro Mfg. Co. v. Convertible Top, *supra* (Harlan, J., dissenting). However, we have before

---

1. "Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, *knowing the same to be especially made or especially adapted for* *use in an infringement of such patent,* and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer." 35 U.S.C.A. § 271 (c). [Emphasis added]

us only a fact question, for no legal issues have been raised.

■ We are faced at the threshold with the words of Rule 52(a) on which Bunn must base most of its appeal on this point. The district court found "no evidence that Defendant Caravalla sold any of the replacement parts that he manufactured 'knowing the same to be especially made . . . for use in an infringement of such patent.'" *See* 35 U.S.C.A. § 271(c), *supra* note 1. Bunn had most strenuously argued the case of contributory infringement below with regard to two parts, a trip lever and a trough. The lower court found that all parts, and specifically those two, were manufactured for purposes of repair, not for purposes of reconstruction. On appeal Bunn cites us only to "the parts themselves," apparently urging some notion of appellate *res ipsa loquitur*. We find these physical specimens inadequate under Rule 52(a) to overturn the trial judge's finding of fact in this case, for we are left with no conviction whatsoever that he was in error. Finding no clearly erroneous factual determination, we affirm the lower court's judgment with regard to contributory patent infringement.

## II. THE TRADEMARK CLAIM

■ One is not allowed to take a free ride on another's registered trademark. The holder of a registered mark is thereby encouraged by the Lanham Act, 15 U.S.C.A. § 1051 *et seq.*, to educate the public that his mark is synonymous with his product's reputation and quality. Trademark infringement too is a mixed question of law and fact. As a matter of law the test for trademark infringement is not mere facial similarity, but the degree of confusion that is likely to register in the purchaser. In order that there be infringement of a trademark, the offending mark must so closely approximate the original mark that there is likely to be "palming off" of one product as the other. Actual consumer confusion is not a requisite, but it does have probative value on the issue of

similarity and on the "likelihood of confusion":

"[I]t is the accepted rule that infringement may be established by showing only that confusion is likely, and there need be no showing of actual confusion or deception if the mark is of such character or is used in such a way as to likely confuse a prospective customer."

American Foods, Inc. v. Golden Flake, Inc., 5 Cir. 1963, 312 F.2d 619. *See also* Sun-Maid Raisin Growers of Calif. v. Sunaid Food Products, Inc., 5 Cir. 1966, 356 F.2d 467.

Against this background of law, Bunn points us to two findings of fact of the district court, alleging that the findings are in obvious conflict and that one of the findings is clearly erroneous under Rule 52(a). The court below found:

"Caravalla's replacement parts were unmarked or bore the imprint of an ampersand simulating the registered 'knot' trademark of Bunn Co.

\* \* \* \* \* \*

"This Court, after a careful examination of the evidence, as well as the two symbols, finds that the ampersand is not an infringement on the Bunn 'knot,' nor is it confusingly similar thereto."

■ We find no necessary conflict between a finding that the ampersand "simulated" the "knot" of Bunn and the finding that the ampersand was "very much different . . . nor . . . confusingly similar thereto." In most areas of endeavor, whether football formations or labels or machines, one may "simulate" another's original thought or device and yet have one's own thought or device be different and distinct in a crucial aspect. The test for infringement is the likelihood of *confusing* similarity, not merely similarity. American Foods v. Golden Flake, *supra*. To hold as Bunn would urge, merely on the alleged contrast between these two findings, would put us in the position of holding as a matter of law that one cannot "simulate" without violating the

Lanham Act. This we will not do. *See,* *e. g.,* Syncromatic Corp. v. Eureka Williams Corp., 7 Cir. 1949, 174 F.2d 649.

The district judge does not seem to have been confused regarding the proper tests in the two findings, and we cannot see any necessary conflict between them.[2] Other than that, we are referred to nothing allegedly clearly erroneous. Our own reading of the record shows no clearly erroneous elements. Quite the contrary, the record shows an admission by the plaintiff corporation's general manager that the marks are not similar upon close examination. The judgment of the district court is affirmed.

### III. UNFAIR COMPETITION

■ The gist of unfair competition in Florida is "palming off." Lumberman's Mutual Casualty Co. v. Lumber Mutual Casualty Ins. Co., 1944, 154 Fla. 367, 17 So.2d 615; Stagg Shop of Miami, Inc. v. Moss, 1960, Fla.App., 120 So.2d 39; Sun Coast v. Shupe, 1951, Fla., 52 So.2d 805; Creamette Co. v. Conlin, *supra.*[3] Actual customer confusion is not a necessary element to the establishment of this claim, but evidence of customer confusion does have probative value on the issue of "palming off." Sun Coast v. Shupe, *supra;* Fidelity Bond and Mortgage Co. v. Fidelity Bond and Mortgage Co. of Texas, S.D.Tex. 1929, 33 F.2d 580, *aff'd,* 5 Cir. 1930, 37 F.2d 99, cited with approval in Lumberman's Mutual Casualty Co. v. Lumber Mutual, *supra;* Try-Me Bottling Co. v. Teaver, 1941, 241 Ala. 266, 2 So.2d 611; Huth v. Rosenzweig, 1946, La.App., 27 So.2d 742; Hygienic Products Co. v. Judson Dunaway Corp., D.C.N.H.1948, 81 F.Supp. 935, vacated on other grounds, 1 Cir. 1949, 178 F.2d 461.[4]

■ Unfair competition is a matter of the totality of the evidence, and we feel it necessary to discuss the evidence of Caravalla's unfair competition in some detail, particularly since we have affirmed the lower court's conclusion that no federal protective laws were violated. For purposes of analysis, we think of this case as a series of digits to be added together. The sum total of the digits is the district judge's conclu-

---

2. Like Bunn, we note that the marks should be compared as wholes, and not divided and compared as subdivisions. Syncromatic Corp. v. Eureka Williams, supra; Food Fair Stores, Inc. v. Food Fair, Inc., 1 Cir. 1949, 177 F.2d 177, 185. We are also of the opinion that this is precisely what the district judge did, and we are not disturbed by his statement that he relied on a "close look" at the marks.

3. "Our examination of the Florida authorities discloses that the law of that State applicable to claims of, and protection from, unfair competition are to the same effect as those prevailing in American jurisprudence generally. This is illustrated by an examination of the cases cited with approval by the Florida Supreme Court in Lumberman's Mutual Casualty Co. v. Lumber Mutual Casualty Ins. Co. of New York, 154 Fla. 367, 17 So.2d 615. It appears from consideration of the authorities that there is not so much dispute and difference as to the fundamental law, as there is in the application, which the courts make in particular cases, to the facts then being considered." Creamette v. Conlin, supra, 191 F.2d at 111.

4. Stagg Shop of Miami v. Moss, supra, contains language that might seem to require actual customer confusion to establish a claim of unfair competition. The circumstances in *Stagg Shop,* however, operated to raise the issue of actual confusion in a different context altogether. Appellants were proprietors of a clothing shop selling in one Florida town. Appellees sold in a different location, but gave their store a similar name. Appellants sued to enjoin on the grounds that, at some undisclosed future date, they might wish to move into appellee's area with a branch store, and that there would be unfair competition with their store name in that event. The Florida Supreme Court held that the possibility of close competition in the future would not entitle appellants to an injunction. The Court's language concerning actual confusion goes only to the question of whether there need be presently existing competition in order to support an unfair competition suit. In our case all parties sell in precisely the same market, where competition is a clear fact and not mere speculation.

sion that there was unfair competition. The digits themselves · are findings of fact that were used to reach that conclusion. We shall test those findings under the "clearly erroneous" standard of Rule 52(a). It is not conclusive of the result that one or more of these individual digits, standing alone, might not support the ruling, for the conclusion that one has unfairly competed must rest on the whole of the evidence. However, our Rule 52(a) analysis does not end our inquiry, for unfair competition is not entirely a question of fact. It is quite possible for a finding of fact to pass muster under the "clearly erroneous" test, and yet, as a matter of law, be unable to have any probative value toward a claim of unfair competition. Therefore, we shall examine the individual findings of fact to see whether, as a matter of law, each particular fact could be used to support a conclusion that there had been unfair competition. Of course, even though unfair competition is a matter of the totality of the evidence, a court must have a sufficient number of probative digits of unfairly competitive acts, or it cannot total to unfair competition as a matter of law.

 The court below found that Caravalla made parts for Bunn machines simply by dismantling Bunn machines and copying the parts, but without Bunn specifications or drawings. The record is clear that this was precisely Caravalla's technique, and Caravalla does not deny it. We note, however, that such methodology of copying is not unlawful. Unfair competition goes to the question of marketing, not to the question of manufacture. One may be perfectly within his legal rights in producing an item and yet well without them in his method of selling it if he markets his own item in such a way that there is likely confusion as to source of manufacture. Electric Auto-Lite v. P. & D. Mfg. Co., Inc., 2 Cir. 1935, 78 F.2d 700. Caravalla's parts may legitimately be cuckoos in Bunn's nest, but they must represent only their real parentage when they enter the world of their own.

 An unpatented part of a patented machine, which part is to be used for replacement purposes, may be copied. Compco v. Day-Brite, *supra*; Sears, Roebuck & Co. v. Stiffel, *supra*; Wilson v. Simpson, *supra*; Aro Mfg. Co. v. Convertible Top, *supra*. If the specifications or drawings are incorrect, then we should assume that the copyist would not last long in his business. But absent any other factors, the copying of an unprotected part for replacement purposes, whether done correctly or not, is not litigable by the originator, so long as there is no "palming off" as to source. *See* Myles Standish Mfg. Co. v. Champion Spark Plug Co., 8 Cir. 1922, 282 F. 961.

The district judge found three incriminating facts regarding Caravalla's merchandising technique: (a) Caravalla's numbering system for his own parts, listed on the trade flyers, was precisely that of Bunn; (b) Caravalla's descriptions of the machine parts were precisely those of Bunn; and (c) "[i]n short, he [Caravalla] literally copied the Bunn price list of replacement parts." We find nothing clearly erroneous in these findings as matters of fact. As matters of law, other questions arise.

 If a numbering system is used only for purposes of reference to a competitor's part, or to the part of the machine into which the particular replacement part is to fit, then the copyist would be entirely within his competitive rights to use the system. Cutler-Hammer, Inc. v. Universal Relay Corp., S.D. N.Y.1968, 285 F.Supp. 636. In addition, if the numbering system is very general, then, absent unusual circumstances, one may not tie it to one's own products by the device of claiming unfair competition. *See* William H. Keller, Inc. v. Chicago Pneumatic Tool Co., 7 Cir. 1924, 298 F. 52. However, a personalized, perhaps unusual, numbering system, particularly one on which customers might rely for the reputation and quality of the product, is a different matter. Noma Lites v. Lawn Spray, E.D.N.Y.1955, 130 F.Supp. 124, *aff'd*, 2 Cir. 1955, 222 F.2d 716. Copying that sort of numbering system

would have probative value in an unfair competition claim. The Bunn numbering system is neither usual nor general, nor did Caravalla use it only for purposes of reference. Caravalla used the system, piece by piece, to number his homemade replacement parts.

■ By the same reasoning, if descriptions are so general, or if the item allows the possibility of only one description, then an exactly-copied description would not be a substantive step toward establishing a case for unfair competition. *See* Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; Williamson v. Answer Phone of Jacksonville, Inc., 1960, Fla.App., 118 So.2d 248; Stevens Linen Works v. William & John Don & Co., 2 Cir. 1904, 127 F. 950. There is no indication in the record that Caravalla was so constrained.

■ It is also lawful to refer to the prices of a competitor if such reference is only for the purposes of comparison and is truthful. *Cf.* Electric Auto-Lite v. P. & D. Mfg., *supra*. However, the use of a verbatim price list as a device for deceiving the public into thinking that it is purchasing the genuine article is probative of unfair competition. The district court specifically found that Caravalla had used the list for the latter purpose, and there is nothing in the record to overturn that finding as clearly erroneous. Therefore, the district court was not incorrect as a matter of law to use this finding of fact as part of the compendium of his conclusion that there had been unfair competition.

■ For his next finding of fact the district judge returned to Caravalla's ampersand. He found that the ampersand had been used on some parts, most being left blank. This much Caravalla admitted. However, it is now Caravalla who insists that the judge's two findings regarding the "knot"/ampersand comparison are mutually exclusive. Defendant would have us hold as a matter of law that if the "knot" were not technically infringed, then ipso facto the ampersand cannot be probative of unfair competi-

tion. Defendant argues that the test for trademark infringement and the test for unfair competition by the use of a "similar" mark are the same: the likelihood of customer confusion. Therefore, Caravalla concludes, what cannot prove trademark infringement cannot be probative of unfair competition. We agree with Caravalla's premise that the use of a "similar" mark is not alone sufficient to prove trademark infringement, nor can "similarity" alone be of direct evidentiary value on the question of unfair competition. It is with Caravalla's conclusion that we disagree. Unfair competition is a broader area than trademark infringement. In the area of unfair competition the use of a similar mark may be probative of intent, of the defendant's state of mind. Intent has no relevance to trademark infringement, because customer confusion is the *sine qua non*. As in trademark infringement, intent is neither necessary to nor conclusive of unfair competition, but, unlike in trademark infringement, intent is probative of unfair competition. My-T Fine Corp. v. Samuels, 2 Cir. 1934, 69 F.2d 76; E. Kahn's Sons Co. v. Columbus Packing Co., 6 Cir. 1936, 82 F.2d 897; Best & Co. v. Miller, 2 Cir. 1948, 167 F.2d 374, cert. denied, 335 U.S. 818, 69 S.Ct. 39, 93 L. Ed. 373. If it is defendant's intent to ensnare buyers by use of a similar mark, he may be unsuccessful enough at his simulation to be free of liability under the trademark laws. However, the fact that he had the intent to fool the public may be probative of the more broadly-conceived tort of unfair competition. We emphasize that it is defendant's intent that is probative, not the similarity of the marks. The marks might be similar and yet the defendant might have had no intent to "palm off." When the mark cannot be probative of defendant's intent, neither can it be probative of unfair competition.

■ We do not find the district judge clearly erroneous in his finding of fact that the "knot" and the ampersand were "similar." Nor do we find his use of that finding to establish unfair

competition erroneous as a matter of law, because the similarity could have probative value on the question of defendant's intent, which, in turn, would have probative value on the question of "palming off." We note also, however, that the twice-removed character of the probative value of this similarity between the marks renders the judge's finding in that regard a weak element in the case for unfair competition. Nonetheless, we cannot say that it does not add an increment of proof, however small, so that the use of the similarity as probative of the claim of unfair competition is not error, despite the fact that the similarity was not an infringement of trademark.

On appeal Caravalla argues in the alternative that his ampersand was actually an effort to distinguish his replacement parts from those of Bunn. We find this entirely unconvincing. If Caravalla had wanted to distinguish the parts by means of a mark, then he could quite easily have chosen one that was not so similar. In addition, Caravalla, by his own admission, used the mark on only eight or ten parts. We would think that one who was seriously trying to distinguish his products from those of another manufacturer by use of a mark would employ the distinguishing mark more often.

■ The district judge further found that Caravalla "made no effort to inform the trade that his replacement parts were of his manufacture and not genuine Bunn parts." That finding is not clearly erroneous from the record. If "the trade" here includes all those who would ultimately procure Caravalla's parts, including those who dealt directly with Caravalla and those who dealt with distributors, then this finding is the heart of the case writ another way. If "the trade" refers only to distributors, the record is clear that Caravalla himself made no express communication to the trade that the parts he was selling were not genuine Bunn parts. Of course, Caravalla's "communication" might be implied from acts as well as delivered by express notice. There is evidence in the record that Bunn sent a notice to the trade regarding the termination of Caravalla as a representative. However, even direct notice might be so worded that it does not convey the necessary information, or might be directed toward a different matter altogether. Dad's Root Beer Co. v. Atkin, E.D.Pa., 1950, 90 F. Supp. 477. We have no specific finding of fact regarding the notice from Bunn upon Caravalla's termination, but evidence in the record indicates that the notice simply conveyed the fact of termination and nothing more. Caravalla could inform the trade of that fact himself and still be guilty of unfair competition if he "palmed off" his own goods as those of Bunn. What is in question is whether he manufactured his own parts and then marketed them in such a way as to lead to a likely confusion of source, not whether or not he was working for Bunn. Whatever "information" reached "the trade" the court's use of the fact that Caravalla himself made no effort to inform is a probative element of unfair competition; it goes to the question of his own pattern of acts, and whether they were designed to "palm off."

■ The district court concluded that Caravalla shipped his parts in plain containers, which included no reference on the label to AAA Replacement Co., Inc., Caravalla's company, as manufacturer; AAA was listed only as shipper. Caravalla disputes this finding, arguing that the label was sufficient to distinguish his parts as to source. The label is sufficiently described in the testimony as a plain label, with nothing expressly alluding to the manufacture of the enclosed parts. We think that a receiver might reasonably conclude that AAA was only the shipper, particularly when other conduct or lack of conduct is taken into consideration. So the district judge found, and the finding of fact is not clearly erroneous. We hasten to make clear that identification as manufacturer need not necessarily be made on the label, for there are any number of means that one might use to make sure that the buying public is not fooled. We

do not hold that mere neglect to label oneself as manufacturer or the use of neuter containers, standing alone, would support this claim of unfair competition. These circumstances are, however, indicative of what someone is trying to do, within a cosmos of acts.

Following his dismissal from Bunn, Caravalla sold his parts under his old, pre-dismissal, business style. While still a representative for Bunn, Caravalla styled himself "AAA Typewriter Company." After his dismissal, his flyer to the trade of October, 1965, listed him as "AAA Replacement Parts Company, a Division of AAA Typewriter Company." In a flyer of one year earlier, he had styled himself "AAA Replacement Parts Company, a Division of American Automatic Typing Machine Company." And in 1967 he styled himself "AAA Replacement Parts Company." However small Caravalla's operation, his size neither explains nor excuses what is at best a slipshod styling and at worst an effort to deceive. The district court found the worst, and concluded that Caravalla's use of his old, pre-dismissal, business style, particularly in light of the rapid shifts in styling, was evidence that he had tried to "palm off" his goods as Bunn-manufactured parts.

■ It is true, as Caravalla urges, that the style "AAA Typewriter Company" was Caravalla's, not Bunn's. While a representative, Caravalla worked on a commission basis through his own efforts in Florida. Under these circumstances and absent any others, it would not be at all clear that the originator and user of the style would be compelled to change it when discharged as representative. However, the fact that the style was of Caravalla's own making does not dispose of the issue in his favor. It is settled law that one may be forbidden to use even one's own name, absent other distinctions, if the total effect of using it is to create confusion as to source. Glazer v. Hoffman, 1944, 153 Fla. 809, 16 So.2d 53; Gottdiener v. Joe's Restaurant, Inc., 1933, 111 Fla. 741, 149 So. 646; McGhan v. McGhan, 1934, 115 Fla.

414, 155 So. 653. Moreover, there were other compelling factors in Caravalla's case, as we have already noted. Buyers, with nothing else to alert them as to the non-genuineness of the parts they were receiving, might easily be deceived. The fact that Caravalla later changed his style is no excuse. We find nothing clearly erroneous in this finding of fact, nor any incorrectness as a matter of law in using it as probative of unfair competition.

The district judge concluded his findings of fact with regard to unfair competition by finding that Caravalla and AAA sold many substandard and defective parts, many of which caused malfunction and consumer dissatisfaction. Further, the court found that Bunn lost goodwill in the process. Caravalla refers us to absolutely nothing in the record that he would have us review as clearly erroneous. In fact, he seems to have dropped the point on appeal. Our own study of the record indicates that there were four witnesses, all Bunn representatives, who testified that substandard parts were sent to users, for which Bunn Company was held responsible. Three of the four witnesses also testified that the parts came from AAA or Caravalla, either directly or through distributors.

■ Caravalla seems to have limited his appeal on this issue to a question of law. We note that the sale of substandard replacement parts is not per se unlawful, as Bunn seems to imply. The use of the phrase "will fit," or some such notation that the parts are designed to work in a machine manufactured by another, is not unlawful. Electric Auto-Lite v. P. & D. Mfg., *supra*. Otherwise, the manufacturer of a machine would be granted, in effect, a monopoly on supplying parts to his own machine, for it is unlikely that any competitor would have access to his specifications for the parts. If one says that his parts "will fit" another machine and they do not, then remedy would lie only with the purchaser of the part, absent unusual circumstances. Bunn argues that we are faced

here with such unusual circumstances, and urges on us the case of Electronics Corp. of America v. Honeywell, 1 Cir. 1970, 428 F.2d 191. In an admittedly unusual case, the First Circuit granted preliminary equitable relief to a computer manufacturer who sought to enjoin false advertising by a replacement-parts-manufacturer. The defendant parts manufacturer and the plaintiff were in direct, two-party competition both in replacement parts for plaintiff's machine and in computers themselves. Bunn urges that Caravalla has made "misleading misrepresentations" in a two-party market situation, making the *Electronics* case applicable, and argues that we should enjoin the making of "substandard" parts by Caravalla, by which Bunn means any replacement parts not made according to Bunn specifications. We find the *Electronics* reasoning not in point. The *Electronics* court was not concerned with whether or not the replacement parts actually worked in the original machine, as Bunn is. In fact, the court acknowledged a very real possibility that defendant's parts might malfunction in plaintiff's machines to plaintiff's business detriment, but found nothing actionable at that point. The court was concerned with false representations as to the ease with which the replacement part might be inserted into plaintiff's computer. The substance of the holding was that, because of those false representations, Honeywell lost replacement-parts business. We have no way of deducing from the evidence that Bunn offered whether the replacement-part market for Bunn parts is limited to only two-parties, so that the effect of any alleged false representation by Caravalla upon Bunn's replacement-parts business could be ascertained with reasonable accuracy, or whether it is a general market. In any case that inquiry relates to the question of damages, and whether Bunn is entitled to an accounting for parts sold by Caravalla, an inquiry which the district judge has postponed until after this appeal on the issue of liability. Even if we found a limited, two-party, market, we do not find the notation "will fit" sufficient to constitute a tort in these circumstances under the *Electronics* approach. "Will fit," followed by failure to fit, is not in itself unfair competition against the manufacturer so long as the origin of the "substandard" parts is clear to the buyer. Any holding of liability for "will fit" under these circumstances would merely substitute one tort theory (false advertising, for example) for a substantively indistinguishable tort theory (unfair competition) that we have found inapplicable to precisely the same set of facts. We find that attempted substitution of theory contrary to *Sears/Compco* and to the purpose of the tort of unfair competition.

■ The case against Caravalla is not perfectly clear. There is very little that is absolutely clear as a matter of law in this case, or in most unfair competition suits. What the appellants have done on appeal, essentially, is to insist that the district court should not have done as it did. It is a plea that we understand, but not one that satisfies our standards of review. We have reviewed the separate fact findings of the district court, and we have found none of them clearly erroneous. Because of the mixed law and fact nature of unfair competition, we have then examined those findings in light of the law to see if the lower court could lawfully use the separately-found facts to add up to a conclusion of unfair competition. We emphasize, however, that despite our individual look into the probative steps toward a conclusion of unfair competition, it is the totality of the evidence that controls the issue of law. We find that the totality of the evidence is sufficient for a finding of unfair competition.

## IV. DEFENDANT LETO

We do not reach the same conclusions with regard to Leto. Here, we are not so much left with a conviction that a mistake was made as we are simply not left with any basis on which to form our conviction. While the district court did set out the specific findings from which it

drew its unfair competition holding against Caravalla, its only finding with regard to Leto was the conclusory one of no liability. On appeal, Bunn insists that the actions of Leto and those of Caravalla are not substantively distinguishable. From the record, that claim has merit.

Leto did send a letter to the trade in which the following sentence appears:

"We are unaffiliated manufacturers of replacement parts for Bunn Tying Machines."

We are not told when that letter was sent out, to whom, or how; nor do we find any analysis of whether that letter had any effect on the likelihood of consumer confusion. Leto used the same numbering system that Bunn used, but with an "AT" in front of the number. We do not know the substantive effectiveness of that alteration. Leto sold Caravalla parts straight from Caravalla inventory. Leto dismantled and copied parts from Bunn machines on his own, without Bunn specifications. He also copied from Caravalla the pricing list and the parts descriptions that Caravalla had copied from Bunn. Leto's corporations used no distinctive containers or labels to denote Leto as manufacturer and not just as shipper. In addition, the record indicates that Leto requested the numbers of Bunn machines from its purchasers. Bunn argues that this was proof that Leto "palmed off" his own parts as genuine Bunn parts, since, Bunn continues, the serial numbers had value only as references to certain specially-built Bunn machines, whose nuances would be recorded only in Bunn's own records. Leto did use only the names of his corporations, and no other business styling.[5]

■ We emphasize again that we are not hooking our remand here on any single one of the above pegs. In fact, we have indicated that some of those single pegs will not alone support the weight of a step toward a conclusion that

Leto unfairly competed. Just as the totality of Caravalla's acts was weighed against the Florida standard, so should be the totality of Leto's acts. We are unable to tell from the record what sum of pegs the district court used to conclude that Leto did not engage in unfair competition, while concluding that Caravalla did. It is beyond the scope of our appellate authority to try to extract those distinguishing pegs, if any, even assuming that the record as it presently stands is adequate to produce them. Therefore, we must remand the case against Leto to the district court for findings of fact and conclusions of law regarding Leto's overall conduct and the substantive differences from that of Caravalla, if any. The district judge need not confine his inquiry to the existing record.

## V. THE COUNTERCLAIM

■ We have little to add to the district court's findings regarding the counterclaim. We find nothing clearly erroneous in the finding that Bunn did not interfere with the business relations of Caravalla. We also observe that the destruction of Caravalla's business records by Leto, with the knowledge and consent of Caravalla, would make computation of any alleged damages insurmountably imprecise.

## V. REMEDIES

Both damages and injunctive relief have been asked. The district court very properly left the computation of damages, if any, to a later hearing. However, the district judge did enter a partial equity judgment that reads, in part:

"The Plaintiff is entitled to a permanent injunction against C. Gus Caravalla and AAA Replacement Parts Co., Inc., and each of them, from committing any acts constituting unfair competition with Plaintiff's business or with Plaintiff in the sale of its replacement parts, *and in particular those acts of unfair competition set*

---

5. We are in agreement with the district court's conclusion that Leto, Tampa Brass, and Automatic Tying are essentially the same entity for purposes of this case.

*forth in Paragraph 9 of the Court's Findings of Fact."* [Paragraph 9 is discussed in our opinion with regard to Defendant Caravalla's unfair competition, above; emphasis added].

This court is jurisprudentially inclined to leave the hammering out of an equity decree to the trial court:

"The essence of equity jurisdiction has been the power of [the trial court] to do equity and to mould each decree to the necessities of the particular case."

Hecht Co. v. Bowles, 1944, 321 U.S. 321, 329, 64 S.Ct. 587, 592, 88 L.Ed. 754, 760. However, in light of our discussion regarding the individual findings of paragraph 9, which facts led the district judge to conclude that there was unfair competition by Caravalla, and in light of the importance that we attach to balancing the interests of any competition with the interests of "fair" competition, we must remand the injunction for reconsideration.

We find no fault with the trial judge's conclusion that an equitable remedy is proper. The remedy at law would be inadequate because the loss of goodwill that the district judge specifically found *might* snowball well beyond the powers of a damage remedy to put right, and because the damage remedy itself might be difficult to compute with any certainty.

■ Without the italicized portion of the injunction and its reference back to the findings of fact, we would have difficulty sustaining the injunction at all, for it would be rendered too vague. One is entitled to know with some precision what he is forbidden to do. F.R. Civ.Pro. 65(d). However, the broad reference back to the findings of fact, as that reference now stands, does not give Caravalla that certainty. It appears to us to enjoin perfectly legal acts, as we have discussed earlier with regard to the specific findings. Admittedly, this field of the law does not yield an easily-separable crop of guidelines, but this injunction lops off a considerable amount of wheat with its chaff.

■ Unless there has been contributory infringement, a court cannot prevent Caravalla or anyone else from copying the unpatented parts of a patented machine, with or without the genuine specifications and drawings. Nor can a court enjoin the production of "substandard" parts under the circumstances that exist in this case. Caravalla has the right to manufacture and to sell parts that do not meet Bunn standards. Addressograph-Multigraph Corp. v. American Expansion Bolt and Mfg. Co., 7 Cir. 1941, 124 F.2d 706; cf. Armour and Co. v. Louisville Provision Co., 6 Cir. 1922, 283 F. 42. What Caravalla cannot do is to represent to the purchasing public that his own parts do meet the Bunn standards. We have already concluded that the notation "will fit," standing alone, does not constitute such representation and cannot be enjoined. Electric Auto-Lite v. P. & D. Mfg. Co., *supra*; Bender v. Enterprise Mfg. Co., 6 Cir. 1907, 156 F. 641; *cf. also* Electronics Corp. of America v. Honeywell, *supra*. People who buy genuine Bunn parts have a reasonable expectation that such parts conform to Bunn standards and specifications. Any such expectation is not reasonable when they buy, knowingly, the parts of another manufacturer. Similarly, Bunn has the right to seek to protect its reputation and business against false representations, express or implied, that the copied parts have passed muster under Bunn tests or specifications. Cutler-Hammer, Inc. v. Universal Relay Corp., *supra*. Bunn does not have the right to prohibit the manufacture and sale of cheaper parts, with different and perhaps lower standards.

■■ The numbering system, description of parts, business styling, and packaging used by Caravalla are all amenable to being enjoined from specific uses or purposes, as we have indicated in our discussion of the issue of liability. A court may also require that an unfair competitor take affirmative steps to distinguish his products so as to indicate their real source to the public. Kellogg

Co. v. National Biscuit Co., *supra*; Sentco, Inc. v. McCulloh, 1953, Fla., 68 So.2d 577. That effort to distinguish, for example, may take the form of "informing the trade" directly. We leave the precise perimeters of the equitable relief to the district judge. However, the equitable relief that is granted should be only that which is required to distinguish the two products, and no more. And in no circumstances should it go beyond the purposes or activities that we have explained above.

■■ The injunction issued by the district court would also restrict Caravalla's use of the ampersand, despite the finding, with which we agree, that the ampersand does not infringe on Bunn's "knot" trademark. On its face, this too seems to be a prohibition against continued production of something that has not been found violative of a federal protective law, contrary to *Sears* and *Compco, supra*. However, we do not find *Sears/Compco* applicable here. The Supreme Court did say that, absent protection by an applicable federal statute, production of an item that is admittedly a bald-faced copy could not be enjoined, only distinguished. The Court also said that state law could make provision for distinctions as to source, such as labeling, the purpose of which would be to assure that there would be no "palming off" for unfairly competitive purposes. These two statements can mesh rather comfortably in the area of patent, with which both *Sears* and *Compco* dealt, or in the area of copyright. The meshing grinds when one tries to apply the reasoning of those cases to trademarks. Unlike a patent (or a copyright), a mark is nothing more than labeling. It is a facial identification attached to something, which is thereby encouraged by protective law to assume a secondary meaning. Therefore, even though a court might not find actual trademark infringement, we feel that it is reasonable to enjoin the use of a "similar" mark if the mark is used by a competitor for purposes of unfairly competing. At times, the only way to provide adequate distinction between marks is to enjoin the use of one. In this sense the mark area is quite different from the areas of patent or copyright. A similar but non-infringing mark would not alone be sufficient to support a finding of unfair competition under our decision today. But if there are other elements of proof going to show unfair competition, and if the use of a similar mark has been found to be one such element, and if that mark is used by a competitor unfairly, then we feel that *Sears/Compco* does not prohibit injunctive relief against the use of one mark.

In the instant case, as in most cases involving unfair competition and the federal protective laws, the area of unfair competition is beset by several currents of analysis that sometimes seem to be moving at cross-purposes. We trust that we have marked a trail through the swampy areas that we were called upon to traverse, and that the trial court will find its way on remand.

Affirmed in part and remanded in part.